UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
YENSY CONTRERAS, Individually, and On
Behalf of All Others Similarly Situated,

                Case No.: 1:21-cv-09434

                Plaintiff,

    -against-

SCRUB DADDY, INC.,

                Defendant.
------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
<u>**THE COMPLAINT**</u>

MILBER MAKRIS PLOUSADIS
 & SEIDEN, LLP
John J. Byrnes, Esq.
Attorneys for Defendant
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
(516) 712-4000
Our File No.: 420-21465

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 3

LEGAL ARGUMENT ....................................................................................................... 5

I.  PLAINTIFF LACKS STANDING FOR HIS CLAIMS ............................................ 6

   a.  Plaintiff fails to establish actual injury under the ADA .................................... 7

   b.  Plaintiff fails to establish a reasonable inference that the conduct will
       continue ........................................................................................................... 8

   c.  Plaintiff fails to establish that there is reasonable inference of his intent
       to return to the Website ................................................................................... 9

II.  PLAINTIFF'S CLAIMS ARE MOOT BECAUSE THE ALLEGED
     ACCESS BARRIERS DO NOT CURRENTLY EXIST ON THE WEBSITE ............... 11

III.  THE COURT LACKS PERSONAL JURISDICTION ........................................... 14

IV. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF
    CAN BE GRANTED ............................................................................................ 17

V.  ABSENT FEDERAL QUESTION OR DIVERSITY JURISDICTION,
    SUPPLEMENTAL JURISDICTION SHOULD NOT EXTEND TO
    PLAINTIFF'S STATE AND LOCAL CLAIMS ..................................................... 21

CONCLUSION .............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

**Cases**

*American Girl, LLC v. Zembrka,*
  2021 WL 1699928, *6 (S.D.N.Y. Apr. 28, 2021) ....................................................16

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678 (2009)............................................................................................18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 570 (2007)............................................................................................18

*Bernstein v. City of New York,*
  621 F. App'x 56, 59 (2d Cir. 2015) ..........................................................................10

*Best Van Lines, Inc. v. Walker,*
  490 F.3d 239, 244 (2d Cir. 2007) ........................................................................15, 16

*Bristol-Myers Squibb Co. v. Superior Court,*
  137 S. Ct. 1773, 1781 (2017)......................................................................................17

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462, 475 (1985)............................................................................................16

*Campbell v. Greisberger,*
  80 F.3d 703, 706 (2d Cir. 1996) ................................................................................12

*Carnegie- Mellon Univ. v. Cohill,*
  484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)..............................21

*Clear Channel Outdoor, Inc. v. City of New York,*
  594 F.3d 94, 110 (2d Cir. 2010) ..........................................................................11, 13

*Diaz v. Kroger Co.,*
  2019 WL 2357531, *2 (S.D.N.Y. June 4, 2019) ............................................ passim

*Dominguez v. Grand Lux Café LLC,*
  2020 WL 3440788, *3 (S.D.N.Y. June 22, 2020) ....................................................10

*Dominguez v. Pizza Hut of Am., LLC,*
  2020 WL 3639977, *2 (S.D.N.Y. July 6, 2020)........................................................10

*F.O. v. New York City Dept. of Educ.,*
  899 F. Supp. 2d 251, 255 (S.D.N.Y. 2012) ............................................................14

*Ford Motor Co. v. Mont. Eighth Jud. Distr. Ct.,*
  141 S. Ct. 1017, 1024 (2021)......................................................................................17

*Ford v. Schering-Plough Corp.,*
  145 F.3d 601, 612 (3d Cir. 1998) ..............................................................................19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*
  528 U.S. 167, 189 (2000)............................................................................................11

*FW/PBS, Inc. v. Dallas,*
  493 U.S. 215, 231, 110 S. Ct. 596, 107 L.Ed.2d 603 (1990)....................................6

*Genesis Healthcare Corp. v. Symczyk,*
  569 U.S. 66, 71 (2013)................................................................................................11

*Gil v. Winn-Dixie Stores, Inc.,*
  993 F.3d 1266, 1276–77 (11th Cir. 2021) ................................................................19

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915, 924 (2011)..................................................................................15
*Guglielmo v. Nebraska Furniture Mart, Inc.,*
  2020 WL 7480619 *1, 2 (S.D.N.Y. Dec. 18, 2020) ...........................................10, 13
*Hanson v. Denckla,*
  357 U.S. 235, 253 (1958)..................................................................................17
*Jaquez v. Aqua Carpatica USA, Inc.,*
  2021-WL 3727094 *3 (S.D.N.Y. 2021) .......................................................6, 7, 8, 21
*Johnson v. TheHuffingtonPost.com, Inc.,*
  2021 WL 6070559, *4 (5th Cir. Dec. 23, 2021)..................................................17
*Kolari v. N.Y.-Presbyterian Hosp.,*
  455 F.3d 118, 122 (2d Cir. 2006).......................................................................21
*Kreisler v. Second Avenue Diner Corp. et al.,*
  731 F.3d 184 (2d Cir. 2013) ..............................................................................6
*Krist v. Kolombos Rest. Inc.,*
  688 F.3d 89, 94–95 (2d Cir. 2012) .....................................................................18
*Lopez v. Arby's Franchisor, LLC,*
  No. 19-CV-10074 (VSB), 2021 WL 878735, at *3 (S.D.N.Y. Mar. 8, 2021) ................. passim
*Lopez v. Jet Blue Airways,*
  662 F.3d 593, 599 (2d Cir. 2011) .......................................................................18
*Lopez v. W. Elm, Inc.,*
  2020 WL 6546214, *3 (S.D.N.Y. Nov. 6, 2020).................................................18
*Makarova v. United States,*
  201 F.3d 110, 113 (2d Cir. 2000) .......................................................................5
*Martinez v. MyLife.com, Inc.,*
  2021 WL 5052745, *2 (E.D.N.Y. 2021) ..........................................................19, 20
*Mendez v. Apple Inc.,*
  2019 WL 2611168, *1 (S.D.N.Y. Mar. 28, 2019)..............................................5, 6, 7
*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
  84 F.3d 560, 567 (2d Cir. 1996) ........................................................................14
*Penguin Grp. (USA) Inc. v. Am. Buddha*
  609 F.3d 30, 34 (2d Cir. 2010) .........................................................................14
*Quezada v. U.S. Wings, Inc.,*
  2021 WL 5827437 (S.D.N.Y. Dec. 7, 2021) ....................................................11, 15
*Robles v. Domino's Pizza LLC,*
  913 F.3d 898, 905 (9th Cir.), *cert. denied,* 140 S. Ct. 122 (2019)........................19
*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,*
  549 U.S. 422, 430-31 (2007) .............................................................................14
*Southern Oil of La., Inc. v. Saberioon,*
  2021 WL 5180056, *2 (S.D.N.Y. Nov. 8, 2021)...........................................14, 15, 16
*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540, 1547 (2016)..............................................................................6
*Starmedia Network, Inc. v. Star Media, Inc.,*
  2001 WL 417118, *3 (S.D.N.Y. Apr. 23, 2001) .................................................16
*Stoutenborough v. Nat'l Football League, Inc.,*
  59 F.3d 580, 583 (6th Cir. 1995) .......................................................................19

*Suris v. Gannett Co.*,
  2021 WL 2953218, *1 (E.D.N.Y. July 14, 2021) ....................................................18
*Walden v. Fiore*,
  571 U.S. 277, 286 (2014) .............................................................................16, 17
*Winegard v. Newsday*,
  2021 WL 3617522, *3 (E.D.N.Y. Aug. 16, 2021) .................................................19, 20


**Statutes**
28 C.F.R. § 36.104, Appendix C .............................................................................18
28 U.S.C. § 1367(c)(3) ........................................................................................21
35 N.Y. C.P.L.R. § 302(a) ....................................................................................15
35 N.Y. C.P.L.R. § 302(a)(1) ................................................................................15
42 U.S.C. § 12181(7) ..........................................................................................19
42 U.S.C. § 12182(a) ..........................................................................................18
42 U.S.C. §§ 12181(7)(A)-(L) ...............................................................................18
Fed. R. Civ. P. 12(b)(1) ...............................................................................1, 6, 11
Fed. R. Civ. P. 12(b)(2) .............................................................................1, 14, 17
Fed. R. Civ. P. 12(b)(6) .............................................................................1, 17, 21

## PRELIMINARY STATEMENT

Defendant, *SCRUB DADDY INC.* respectfully submits this memorandum of law in support of Defendant's Motion to Dismiss the Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6) respectively.

Defendant operates a website, scrubdady.com (the "Website") through which it sells sponges and other cleaning products. Defendant is solely an online retailer, without any "brick and mortar" store locations. It has a single office located in Pennsauken Township, NJ. Plaintiff alleges that certain aspects of Defendant's website cannot be read by his screen reader software. Specifically, he alleges that "a) The screen reader reads some of the website links in the incorrect order. b) The screen reader fails to read the social media icon links. c) The screen reader skips over certain text on the page. d) The screen reader fails to describe the images." Complaint ¶ 2.

Notably, however, Plaintiff fails to identify certain key facts, the absence of which leave his allegations little more than bare and conclusory. Specifically, he fails to identify the type of computer he used, the operating system he used (e.g. Windows, Macintosh, etc.), the computer operating system(s) with which his screen reader software is compatible, whether his screen reader software was up to date and functioning properly at the time he attempted to access Defendant's website, the internet platform(s) with which his screen reader software is compatible (e.g. Google Chrome, Apple Safari, Windows Internet Explorer, Mozilla Firefox, etc.), the internet platform he actually used to access Defendant's website, and whether the internet platform was up to date on his computer system at the time he attempted to access Defendant's website. Consequently, Plaintiff has failed to allege any facts that demonstrate, even by the low standards of initial pleading, that the alleged errors he encountered were actually the result of access barriers on

Defendant's website and not the result of user error. Indeed, absent such properly plead facts, a person using broken or out-of-date screen reader software, a broken computer, or an internet browser that is not compatible with their particular screen reader software, would appear to have a viable claim against any online retailers that does business in their state.[1] Absent such properly plead facts, Plaintiff lacks standing to sue. He has failed to assert a sufficiently concrete and particularized injury over which this Court has subject matter jurisdiction or through which this Court may assert personal jurisdiction over the Defendants.

Perhaps more importantly, and regardless of the above analysis, it must also be noted that as of the date of this motion the alleged access barriers do not currently exist on the Website. Defendant is fully aware of the WCAG 2.1 guidelines and the standards of accessibility therein and strives to maintain a website that is compliant. Defendant has engaged a leading web-accessibility consultant, 216 Digital, to continuously monitor and preempt any future accessibility barriers, and ensure ongoing compliance with all applicable accessibility standards. Based on this, the Court lacks subject matter jurisdiction over Plaintiff's claims because the alleged conduct (regardless of whether ultimately proven to be discriminatory or not) has ceased and is unlikely to resume. No case or controversy currently exists through which this Court could grant Plaintiff relief.[2]

---

[1]  Of note, this action represents one of 136 nearly identical ADA website accessibility lawsuits filed by Plaintiff in the Southern District of New York.

[2]  Defendant seeks dismissal of the Complaint in its entirety with prejudice. However, if the Court grants dismissal of only Plaintiff's claims under the ADA, absent federal question or diversity jurisdiction, the traditional values of judicial economy weigh in favor of declining supplemental jurisdiction over any state or local claims.

## STATEMENT OF FACTS

Defendant is an online retailer, offering various household cleaning products, including sponges, clothes, and accessories. Defendant owns and operates a website at the web address https://scrubdaddy.com/ (the "Website"), through which an individual may shop for and purchase a variety of products. Defendant does not own, operate, or lease a physical location for the purposes of marketing or selling their goods. *See*, Declaration of Defendant's Chief Operating Officer, John O'Brien ("O'Brien Decl.") annexed to the Affirmation of John Byrnes ("Byrnes Aff.") as **Exhibit "D."**

Plaintiff alleges he is visually impaired and legally blind. Complaint (Compl.) ¶ 1. Plaintiff claims to use screen reading software to access information located on websites. *See id.* ¶¶ 2, 23. For screen reading software to function, the information on the website must be coded in such a way as to allow the screen reader to render the visual information on the website to be rendered into text. *See id.* ¶ 19. The World Wide Web Consortium ("W3C") is an international website standards organization that publishes website accessibility guidelines for blind and visually impaired users known as the Web Content Accessibility Guidelines. *See id.* ¶ 19. The most recent version of these guidelines is known as "WCAG 2.1." *Id.* Plaintiff now asserts that the Website is maintained in a manner that is discriminatory, due to its alleged access barriers and alleged non-compliance with WCAG 2.1. *Id.*

Plaintiff claims to have visited the Website most recently in November 2021, in an attempt to "purchase products, goods, and/or services," but claims to have encountered several accessibility barriers. Compl. ¶¶ 2, 22, 23. Plaintiff fails to identify what, if anything he intended to purchase, what elements of the Website inhibit his ability to purchase goods, and how they

managed to do so, where on the Website he encountered errors, or what products he would purchase in the future, should the alleged accessibility barrier be removed. *Id.*

Plaintiff first sets forth a list of general and vague examples of purported "multiple barriers":

(a) "the screen reader reads some of the website links in the incorrect order;"

(b) "the screen reader fails to read the social media icon links;"

(c) "the screen reader skips over certain text on the page;" and

(d) "the screen reader fails to describe certain images."

Compl. ¶¶ 2(a)-(d), 23(a)-(d). However, Plaintiff fails to allege what actual information he wanted to access but was unable to do so, and how it harmed him. *Id.* Nothing is put forth concerning what it was that Plaintiff sought to purchase, what it was that prevented him from purchasing same, how these illusory barriers prevented him from purchasing same, and whether Plaintiff actually would return to the Website in the future to purchase the unknown product(s). *Id.*

Perhaps more importantly, Plaintiff fails to identify the make and model of computer he used, the operating system he used (e.g. Windows, Macintosh, etc.), the computer operating system(s) with which his screen reader software is compatible, whether his screen reader software was up to date and functioning properly at the time he attempted to access Defendant's website, the internet platform(s) with which his screen reader software is compatible (e.g. Google Chrome, Apple Safari, Windows Internet Explorer, Mozilla Firefox, etc.), and the internet platform he actually used to access Defendant's website. As a result, Plaintiff fails to demonstrate that his screen reader software was functioning properly and was being used as intended at the time he claims to have experienced the alleged access barriers on Defendant's website. Plaintiff fails to

identify that the alleged access barriers on Defendant's website were in fact access barriers, and not the result of clear user error.

Nonetheless, based on these bare and conclusory allegations, Plaintiff alleges that the Website violates Title III of the ADA and the New York City Human Rights Law ("NYCHRL"). *See id.* ¶¶ 37-52.

Further to this end, it must also be noted that, no access barriers currently exist on the Website. As set forth in the accompanying Declaration of Aaron Kraus, Defendant strives to ensure that the Website maintains compliance with the WCAG 2.1 accessibility standards. Defendant has retained the ongoing services of an accessibility consultant, 216 Digital (a national leader in ADA remediation and website compliance), to continuously audit the Website for compliance and preempt any future potential errors that might impede access for persons with disabilities, including those who are visually impaired. *See* O'Brien Decl.

## **LEGAL ARGUMENT**

Courts may dismiss a complaint for a lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Diaz v. Kroger Co.*, 2019 WL 2357531, *2 (S.D.N.Y. June 4, 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A plaintiff asserting subject matter jurisdiction has the burden of proving that it exists by a preponderance of the evidence." *Mendez v. Apple Inc.*, 2019 WL 2611168, *1 (S.D.N.Y. Mar. 28, 2019). Although the Court must accept as true all material factual allegations in the Complaint, "a court may not premise jurisdiction on favorable inferences drawn from the pleadings." *Kroger*, 2019 WL 2357531, at *2. "Instead, a plaintiff must show by a preponderance of the evidence that

subject matter jurisdiction lies over the dispute." *Id*. "When deciding a motion under Rule 12(b)(1), a court may rely on evidence outside the complaint." *Id*.

"To survive a defendant's Rule 12(b)(1) motion to dismiss, a plaintiff must allege facts that affirmatively and plausibly suggest that he or she has standing to sue." *Apple*, 2019 WL 2611168, at *1. To establish standing, "a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Id*.

When the case is at the pleading stage, "the plaintiff must clearly allege facts demonstrating each element." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L.Ed.2d 603 (1990). *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). As plaintiff has failed to allege any facts to indicate the alleged barriers he encountered on the Website were the result of the Website's programming, and not based on user error, the Complaint fails to satisfy any of these three requirements.

## I.   PLAINTIFF LACKS STANDING FOR HIS CLAIMS.

In actions brought under the ADA, the Second Circuit has "found standing (and therefore an injury in fact) where a plaintiff: (1) alleges past injury under the ADA, (2) shows that it is reasonable to infer from his or her complaint that the discriminatory treatment will continue, and (3) shows that it is reasonable to infer that he or she "intend[s] to return to [the public accommodation]."*Jaquez v. Aqua Carpatica USA, Inc.,* 2021-WL 3727094 *3 (S.D.N.Y. 2021) (quoting *Kreisler v. Second Avenue Diner Corp. et al.,* 731 F.3d 184 (2d Cir. 2013)).

a. **Plaintiff fails to establish actual injury under the ADA.**

In order to have standing, a plaintiff must plead a "a concrete, particularized, and actual or imminent injury-in-fact." *Apple*, 2019 WL 2611168, at *2. "There are no injuries in fact pleaded because the purported injuries described lack all requisite specificity." *Id.* at *2.

This matter is analogous to that of *Jaquez v. Aqua Carpatica USA, Inc.*, wherein this Court held that plaintiff failed to plead injury in fact and dismissed the matter for lack of standing. In its decision on defendant's motion to dismiss in *Jaquez*, this Court stated that plaintiffs "must allege sufficient facts to show 'more than a sheer possibility that a defendant has acted unlawfully' in order to survive a motion to dismiss." *Jaquez*, 2021-WL 3727094, at *4. This Court continued by holding that "it is not sufficient to claim that [plaintiff] suffered an injury in fact by casually going on the website with the intent of browsing and potentially purchasing a product without identifying the product that he was prevented from purchasing." *Id.* This Court based its decision on the fact that plaintiff had failed to even articulate the product that he intended to purchase on the website and failed to specify the name of any product that he desired to purchase in the future. *Id.*

In his Complaint, Plaintiff alleges only that he last visited the Website in November 2021 "to, *inter alia*, purchase products, good, and/or services." Compl. ¶ 2. Although he indirectly asserts that there have been multiple visits to the Website, he does not say when such visits occurred, other than one in November 2021, which has yet to be confirmed. *Id.* ¶¶ 2, 22. Plaintiff does not identify what goods he was prevented from purchasing, making no references to a single item sold on the Website. He does not identify what sections of the Website he tried to access but could not. And, while he lists four alleged "barriers," Plaintiff does not allege which one of them prevented him from accessing the Website or purchasing any goods. *Apple*, 2019 WL 2611168, at *2 (finding such general allegations insufficient to allege an injury-in-fact). Simply put, Plaintiff

has put forth even more generalized and broad allegations than the unsuccessful plaintiff in *Jaquez*. When the standard calls for "concrete" and "particularized" allegations, there should be no question that dismissal is warranted where, as here, a plaintiff has failed to even provide an iota of detail concerning his visit to a defendant's website, other than a general idea of when his last visit occurred.

**b.  Plaintiff fails to establish a reasonable inference that the conduct will continue.**

Plaintiff's alleged specific contentions likewise fail. Plaintiff assets that the Website is inaccessible in four specific respects: (a) "the screen reader reads some of the website links in the incorrect order;" (b) "the screen reader fails to read the social media icon links;" (c) "the screen reader skips over certain text on the page;" and (d) "the screen reader fails to describe certain images." Compl. ¶¶ 2(a)-(d), 23(a)-(d).

None of these allegations contain enough detail to explain how they render the Website inaccessible. *See*, O'Brien Dec. In fact, at least one of Plaintiff's alleged "barriers," namely the screen readers failure to read the social media links on the Website, has nothing to do with an individual's ability to browse and purchase the goods sold on the Website itself.

Nevertheless, after receiving notice of the claims against it, Defendant took immediate action and retained the services of an accessibility consultant, 216dircect, to further improve the Website. Defendant has taken swift and direct action to ensure compliance with the WCAG 2.1 guidelines, particularly as they pertain to the alleged issues referenced in Plaintiff's Complaint. *Id.* At present, Defendant has addressed all of Plaintiff's alleged "concerns." *Id.* Moreover, Defendant has no intention of reversing or abandoning these improvements, as is proven by its continued engagement with its accessibility consultant. *Id.* Moreover, a commitment to equal accessibility for all potential consumers is not only in the best interest of Defendant's business, but also vital to

8

maintaining a high level of consumer satisfaction. *Id.* Further demonstrating Defendant's intent and commitment to maintaining the Website in an accessible manner.

Defendant's immediate response to Plaintiff's alleged concerns eviscerates the second requirement to obtain standing in an ADA case, namely, that the alleged discriminatory treatment will continue. *See Lopez v. Arby's Franchisor, LLC*, No. 19-CV-10074 (VSB), 2021 WL 878735, at *3 (S.D.N.Y. Mar. 8, 2021). In addition to addressing Plaintiff's specific issues, Defendant has committed itself to making the Website accessible, as proven by the continued retention of an accessibility consultant. Defendant's commitment to accessibility is further memorialized on the Website itself, where Defendant maintains an entire webpage devoted to accessibility, and its efforts concerning same. *See*, O'Brien Dec. A review of the Website reveals that Defendant even provides a customer service phone number and email address for consumer use, so that anyone experiencing difficulties, like the issues Plaintiff complains of herein, may contact Defendant directly to have their issues addressed. *See*, O'Brien Dec; s*ee, Kroger*, 2019 WL 2357531, at *3–4 (relying upon company affidavit to find company corrected alleged accessibility issues and thus plaintiff lacked standing). It is important to note, Defendant has no record of Plaintiff visiting the Website, attempting to purchase goods, or contacting Defendant regarding alleged barriers, prior to the date that this matter was filed. *See*, O'Brien Dec.

### c.  Plaintiff fails to establish that there is reasonable inference of his intent to return to the Website.

Courts most frequently find in these types of ADA cases that the plaintiff fails to satisfy the third requirement for standing, a reasonable inference of the plaintiff's intent to return to the currently inaccessible place of public accommodation. *See Arby's,* 2021 WL 878735, at *3–4. "In order to obtain injunctive relief, a plaintiff cannot rely on a past injury alone but must demonstrate that she is likely to be harmed again in the future in a similar way." *Id.* at *3. "Intent to return is a

'highly fact-sensitive inquiry.'" *Dominguez v. Grand Lux Café LLC*, 2020 WL 3440788, *3 (S.D.N.Y. June 22, 2020); *Guglielmo v. Nebraska Furniture Mart, Inc.*, 2020 WL 7480619 *1, 2 (S.D.N.Y. Dec. 18, 2020) (quoting *Bernstein v. City of New York*, 621 F. App'x 56, 59 (2d Cir. 2015)). "To establish this factor, '[t]he plaintiff must allege specific facts that show a plausible intention or desire to return to the place but for the barriers to access.'" *Arby's,* 2021 WL 878735, at *3 (quoting *Grand Lux Café*, 2020 WL 3440788, at *3). "Merely asserting an intent to return to the place of injury someday, when the alleged barriers have been rectified, is insufficient." *Arby's,* 2021 WL 878735, at *3 (quoting *Dominguez v. Pizza Hut of Am., LLC*, 2020 WL 3639977, *2 (S.D.N.Y. July 6, 2020)).

Plaintiff claims that he is "highly interested" in purchasing products from Defendant, and that he "intends to return to the website in order to transact business there as soon as the accessibility barriers are cured." Compl. ¶ 24. However, "courts need not credit a complaint's conclusory statements without reference to its factual context." *Arby's,* 2021 WL 878735, at *3. "The Second Circuit and other courts have failed to find a sufficient intent to return even in cases where plaintiffs have pled far more specific allegations than what Plaintiff has done here." *Id.* In cases such as this, where a plaintiff has submitted nothing beyond "sparse allegations" of their intent to return, the court typically finds against the plaintiff, doubting that they would ever return to the website to make a purchase, even if it were readily accessible. *Guglielmo*, 2020 WL 7480619, at *5 (finding plaintiff lacked standing to bring a claim under the ADA where the complaint "offer[ed] only vague and conclusory allegations of intent to return, and fail[ed] to establish a likelihood of return"). Similar to *Guglielmo,* plaintiff "has not alleged any future concrete plan to visit the Website" and, thus, has failed to meet his burden and sufficiently plead standing. *Id.*

As established by the foregoing, Plaintiff's "complaint does not offer sufficient non-conclusory factual allegations to establish an intent to return." *Arby's,* 2021 WL 878735, at *4. Plaintiff merely feigns intent in a lazy attempt to justify his baseless claims. Something he has done in hundreds of matters, and will likely continue to do unless preempted. To be sure, some outlier courts in this district have largely relied on a plaintiff's say-so to conclude that the plaintiff had standing to assert an ADA website accessibility claim. *See, e.g., Quezada v. U.S. Wings, Inc.,* 2021 WL 5827437 (S.D.N.Y. Dec. 7, 2021). But the consensus approach, as reflected by this Court's ruling in *Arby's,* dictates otherwise. "Plaintiff's boilerplate, cut-and-paste, fill-in-the-blanks Complaint does not provide enough specificity to satisfy the requirements for standing under the ADA." *Arby's,* 2021 WL 878735, at *4.

Because the same standing requirements apply to Plaintiff's local claim, Plaintiff also lacks standing to assert his City claim. *Id.* For the foregoing reasons, Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## II.   PLAINTIFF'S CLAIMS ARE MOOT BECAUSE THE ALLEGED ACCESS BARRIERS DO NOT CURRENTLY EXIST ON THE WEBSITE.

"[A]n actual controversy must be extant at all stages of review." *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 71 (2013). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* at 72. "[F]actual changes made by a defendant after litigation has commenced cannot render a case moot unless it is absolutely clear the defendant cannot resume the allegedly offending conduct." *Clear Channel Outdoor, Inc. v. City of New York,* 594 F.3d 94, 110 (2d Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189 (2000)). However, "[t]he voluntary cessation of allegedly illegal activity may render a case moot 'if the defendant can demonstrate that (1) there is no reasonable expectation

that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id.* (quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)).

As explained above, immediately upon being served with Plaintiff's Complaint, Defendant undertook all necessary steps to ensure that the Website complied with the WCAG 2.1 guidelines, despite the fact that Defendant is not a place of public accommodation under Title III of the ADA. *See*, O'Brien Dec.  Upon receiving notice of the claims against it, Defendant retained the services of an accessibility consultant, 216 Digital, a national leader in ADA remediation and website compliance, to further improve the Website, specifically, as it pertains to the allegations in Plaintiff's Complaint. Defendant has worked diligently with 216 Digital to improve the Website and make sure that no impediments to access exists therein. *Id.* 216 Digital has conducted numerous audits of the Website and implemented various improvements, all in furtherance of compliance with prevailing web accessibility guidelines.  *Id.* At present, Defendant has addressed all of Plaintiff's alleged "concerns." *Id.*

Moreover, Defendant has no intention of reversing or abandoning these improvements, as is proven by its continued engagement with its accessibility consultant. *See*, O'Brien Dec. Additionally, compliance in in the best interest of Defendant's business. *Id.*

The Court has previously dismissed two nearly identical ADA website accessibility matter, finding those claims moot. In the Court's decision in *Diaz v. Kroger Co.*, the plaintiff, a visually impaired individual, alleged that the defendant's website was not compliant with WCAG standards and thus violated the ADA. *Diaz*, 2019 WL 2357531, at *2. In response to the complaint, the defendant submitted an affidavit by which it explained that: (i) it had undertaken efforts to comply with WCAG guidelines; (ii) the affiant personally made sure that all deficiencies in the website

12

(that made it non-compliant) were remedied; (iii) the website was, in fact, now compliant; (iv) it would continue to keep the website compliant; and (v) it would work to keep the website up to date with any new standards that may be established. *Id.* at *3. The court found these averments to be sufficiently specific and detailed to meet the showing required to establish mootness and, thus, dismissed the complaint. *Id.* at *5.

In *Guglielmo v. Nebraska Furniture Mart, Inc.,* the plaintiff, a visually impaired individual, alleged that he visited defendant's website and was unable to make a purchase, due to the existence of access barriers that violated the ADA. *Guglielmo*, 2020 WL 7480619, at *1, 2. In response, the defendant also argued that the claim was moot and submitted a declaration stating: (i) prior to lawsuit, defendant had invested time and resources in improving the website's accessibility; (ii) the defendant had since remedied each of the ADA violations alleged by the plaintiff; and (iii) the defendant intended to commence a significant redesign of its website, to enhance accessibility. *Id.* at *6. This Court, citing to *Diaz*, held that the defendant's declaration was sufficient to demonstrate that the claims were moot and dismissed the complaint. *See id.*

Here, like in *Diaz and Guglielmo*, Defendant has submitted evidence, via the O'Brien Declaration, by which Defendant has demonstrated that: (i) the Website is currently compliant with WCAG 2.1 standards; (ii) it has specifically addressed and remedied any alleged access barriers Plaintiff claims to have encountered; (iii) it will actively update the Website to ensure that it continues to be compliant with WCAG 2.1 standards; and (iv) it will make sure to comply with any new standards set forth by the WCAG in the future. *See*, O'Brien Dec. In short, Defendant has demonstrated that the Website is now (and will continue to be) complaint with WCAG guidelines. There is no reasonable expectation that any of the alleged violations would recur in the future. *See Clear Channel Outdoor*, 594 F.3d at 110. As such, no case or controversy currently

13

exists through which this Court could provide Plaintiff relief, and Plaintiff's claims are moot. Accordingly, the Complaint should be dismissed with prejudice because the court lacks subject matter jurisdiction. *See F.O. v. New York City Dept. of Educ.*, 899 F. Supp. 2d 251, 255 (S.D.N.Y. 2012).

## III.     THE COURT LACKS PERSONAL JURISDICTION.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Southern Oil of La., Inc. v. Saberioon*, 2021 WL 5180056, *2 (S.D.N.Y. Nov. 8, 2021) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007)). "A plaintiff opposing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) 'bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit.'" *Southern Oil*, 2021 WL 5180056, *2 (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)) (other citation omitted). "Prior to an evidentiary hearing, a plaintiff need only make a *prima facie* showing that jurisdiction exists." *Southern Oil*, 2021 WL 5180056, *2. "Where a court does not hold an evidentiary hearing on the jurisdictional question, it may, nevertheless, consider matters outside the pleadings." *Diaz*, 2019 WL 2357531, at *5.

"Whether a foreign defendant can be sued in a federal court 'is determined in accordance with the law of the state where the court sits, with federal law entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.'" *Southern Oil*, 2021 WL 5180056, at *4 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). "In assessing whether personal jurisdiction exists, courts engage in a two-part analysis, first determining whether there is a statutory basis for

14

exercising personal jurisdiction, and second deciding whether the exercise of jurisdiction comports with due process." *Southern Oil*, 2021 WL 5180056, at *4.

There is no doubt that Defendant, a Pennsylvania corporation with its headquarters and principal place of business in Pennsauken Township, New Jersey, is not subject to general jurisdiction in New York. *See*, O'Brien Dec; *see Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011) ("the paradigm forum for the exercise of general jurisdiction … for a corporation … is … one in which the corporation is fairly regarded as at home") (ellipses added).

This leaves specific jurisdiction. New York's long-arm statute, 35 N.Y. C.P.L.R. § 302(a) does not reach to the limits of the Due Process Clause. *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 244 (2d Cir. 2007). Plaintiff's counsel has previously asserted in these types of cases that the Court has personal jurisdiction because the defendant "transacts any business" in New York. *See* 35 N.Y. C.P.L.R. § 302(a)(1); *Diaz*, 2019 WL 2357531, at *5–7 (finding no personal jurisdiction); *U.S. Wings*, 2021 WL 5827437, at *6–7 (finding personal jurisdiction). "Therefore, a court has to determine (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *U.S. Wings,* 2021 WL 5827437, at *6.

Simply operating a website that can be accessed anywhere in the world is insufficient to establish that Defendant is transacting business in New York.

> While there is some contrary authority within the District, several other judges in the District have reached the same conclusion as the Court does here, and have held that simply operating a website, absent more, is insufficient to establish that Defendants "transact business" in New York within the meaning of C.P.L.R. § 302(a)(1) sufficient to subject a defendant to jurisdiction in New York.

*American Girl, LLC v. Zembrka*, 2021 WL 1699928, *6 (S.D.N.Y. Apr. 28, 2021); *see also Best Van Lines,* 490 F.3d at 350 ("[I]t is now well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit.") (quoting *Starmedia Network, Inc. v. Star Media, Inc.,* 2001 WL 417118, *3 (S.D.N.Y. Apr. 23, 2001)).

The critical element that is missing is any purposeful activity by Defendant to target or aim its website at potential New York customers. *Best Van Lines,* 490 F.3d at 246 ("New York courts define transacting business as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws"). "It is 'insufficient to rely on a defendant's "random, fortuitous, or attenuated contacts" or on the "unilateral activity" of a plaintiff' with the forum to establish long-arm/specific jurisdiction.'" *Southern Oil*, 2021 WL 5180056, at *4 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Thus, absent some action taken by Defendant to specifically target New York with its website, Plaintiff cannot establish that Defendant "transacts business" in New York for the purposes of personal jurisdiction. *See American Girl,* 2021 WL 1699928, at *7.

Because Plaintiff cannot establish that the Court has personal jurisdiction under New York's long-arm statute, we need not consider the second requirement to establish personal jurisdiction, namely, that the assertion of such jurisdiction comports with due process. Nevertheless, it should be apparent that jurisdiction based solely on Plaintiff's unilateral access to the Website in New York would violate the Due Process Clause.

Recent case law strongly suggests that Plaintiff's personal jurisdiction theory—allowing suit anywhere any person encounters any website accessibility issue—would violate Defendant's

16

right to due process. The Supreme Court has repeatedly required the contact with the forum be the result of the defendant's actions, and not the unilateral actions of the plaintiff. The defendant must "purposefully avail itself of the privilege of conducting activities in the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Distr. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The defendant's ties to the forum, in other words, must be ties that "the defendant *himself*" purposefully forged. *Walden*, 571 U.S. at 284 (emphasis in original). Furthermore, "[t]he plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum." *Ford Motor*, 141 S. Ct. at 1025 (collecting cases). "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017).

Reading these cases together leads inevitably to the conclusion that the Fifth Circuit recently reached: "Accessibility alone cannot sustain our jurisdiction. If it could, lack of personal jurisdiction would be no defense at all." *Johnson v. TheHuffingtonPost.com, Inc.*, 2021 WL 6070559, *4 (5th Cir. Dec. 23, 2021). As that court explained, if a defendant could be sued anywhere its website could be accessed, that would eliminate the distinction between general and specific jurisdiction and allow any website operator to be sued anywhere. *Id.* at *7–8. This would violate the Due Process Clause.

Based on the foregoing, Plaintiff's complaint should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

## IV.   PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even if Plaintiff has standing to assert his claims, and even if this Court has personal jurisdiction over Defendant, dismissal would still be warranted because Plaintiff fails to state a claim for relief under the ADA. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)**,** "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Even treating Plaintiff's factual allegations as true for purposes of this motion, the Court's standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A complaint need not make 'detailed factual allegations,' but it must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Arby's,* 2021 WL 878735, at *3 (quoting *Iqbal*, 556 U.S. at 678). In this case, calling a website a "place of public accommodation" does not make it so.

Title III of the ADA prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation[.]" 42 U.S.C. § 12182(a). Thus, "[t]o state claim for violation of Title III of the ADA, a plaintiff must 'establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA.'" *Lopez v. W. Elm, Inc*., 2020 WL 6546214, *3 (S.D.N.Y. Nov. 6, 2020) (ADA accessibility case) (quoting *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012)).

In determining what constitutes a place of public accommodation, we refer to the statute. "The statute enumerates 12 categories of 'private entities' that 'are considered public accommodations.'" *Lopez v. Jet Blue Airways*, 662 F.3d 593, 599 (2d Cir. 2011) (citing 42 U.S.C. §§ 12181(7)(A)-(L)); *see Suris v. Gannett Co.*, 2021 WL 2953218, *1 (E.D.N.Y. July 14, 2021) ("In order to be a place of public accommodation, a facility ... must fall within one of these 12 categories.") (quoting 28 C.F.R. § 36.104, Appendix C).

"A word is known by the company it keeps." *Arby's,* 2021 WL 878735, at *5. "Similarly, where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* "Considering each of these maxims, every single example listed among the twelve categories in § 12181(7) is a place or establishment[.]" *Arby's,* 2021 WL 878735, at *5; *see also Winegard v. Newsday,* 2021 WL 3617522, *3 (E.D.N.Y. Aug. 16, 2021) (of the 50 examples contained in section 12181(7), at least 49 "indisputably relate to physical places"); *see also Martinez v. MyLife.com, Inc.,* 2021 WL 5052745, *2 (E.D.N.Y. 2021) ([o]f the fifty specific examples of businesses contained within the ADA's definition of 'public accommodation,' at least forty-nine indisputable relate to physical places"). "Websites or other virtual businesses are not included explicitly or implicitly among any of the categories." *Martinez,* 2021 WL 5052745, at *2.

Numerous other Circuits addressing this issue have held that websites are not places of public accommodation. *Id.* (citing *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1276–77 (11th Cir. 2021); *Robles v. Domino's Pizza LLC*, 913 F.3d 898, 905 (9th Cir.), *cert. denied*, 140 S. Ct. 122 (2019)); *see also Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) (public accommodations are limited to actual, physical places); *Stoutenborough v. Nat'l Football League, Inc.*, 59 F.3d 580, 583 (6th Cir. 1995) (same).

Notably, most recent decisions have concluded that websites are not places of public accommodation. We point in particular to the recent decisions in *Winegard,* and *Martinez.* In *Winegard*, the court traced the "long history" of the phrase "public accommodation," which "referred to the particular subset of businesses that had heightened duties of service … because of the public nature of their physical facilities." *Winegard*, 2021 WL 3617522, at *2. The court further

noted that Congress deliberately chose not to expand the scope of the ADA beyond physical places even though there were numerous examples of mail order and other types of retailers that had eschewed brick-and-mortar establishments by the time the ADA was passed in 1990. *Id*. at *3-4. Likewise, Congress did not seek to expand the scope of the ADA to websites when it amended the ADA in 2008 even though the online economy had exploded and courts had held the ADA was limited to physical places. *Id*. at *4 n.11.

"All this is clear enough even before we get to the statute's use of the phrase 'place of' to modify the term 'public accommodation.'" *Id*. at *5. "Set together in sequence, the collective phrasing leaves no doubt that Section 12182(a) was not meant to reach" websites. *Winegard*, 2021 WL 3617522, at *5. Drawing on additional sources, the court concluded that "place" ordinarily refers to physical places, not websites. *Id*. at *6. The bottom line is that a website is not a place of public accommodation.

In *Martinez*, the Eastern District held that "the plain text of the [ADA] contemplates inclusion of only businesses with a physical location…This focus on tangible physical places 'demonstrates Congress's decision to apply the ADA's antidiscrimination provisions to physical places rather than business operations generally.'" *Martinez*, 2021 WL 5052745, at *2. In opposition, plaintiff claimed that other district courts have relied on legislative history to find that the "[t]he twelve categories of public accommodations in particular also should be construed liberally." *Id*. However, the court disregarded plaintiff's argument, holding that "even liberally construed, [the Eastern District] cannot find that defendant's website is a sales establishment" within the context of the ADA. *Id*. (holding that "construing a 'sales establishment' to include a website selling web-based services would contravene th[e] settled principle of statutory interpretation"). *Id*.

In addition to the foregoing, it must also be noted Congress intentionally limited the scope of the ADA to a place of public accommodation. A website, however, is neither a "place" nor a "public accommodation," as those terms are defined in the statute. Accordingly, Plaintiff's ADA claim based on alleged website inaccessibility should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## V.   ABSENT FEDERAL QUESTION OR DIVERSITY JURISDICTION, SUPPLEMENTAL JURISDICTION SHOULD NOT EXTEND TO PLAINTIFF'S STATE AND LOCAL CLAIMS.

Where a district court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over any remaining claims, 28 U.S.C. § 1367(c)(3). *Jaquez*, 2021 WL 3727094, *6. "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction." *Id.* (citing *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)). "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (citing *Carnegie- Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

This Court in *Jaquez*, found "that nothing distinguishes this matter from 'the usual case.'" All federal claims against defendant were dismissed prior to trial and none of the factors laid out by the Supreme Court – judicial economy, convenience, fairness, or comity – weighed against dismissal.

Should dismissal of the lone federal claim in this matter be granted, the same set of circumstances will exists in the instant matter. Accordingly, the Court should decline supplemental jurisdiction over Plaintiff's City claim.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint with prejudice for lack of subject matter jurisdiction, lack of personal jurisdiction, and/or for Plaintiff's failure to state a claim upon which relief can be granted.

Dated: Woodbury, New York
      February 11, 2022

                              MILBER MAKRIS PLOUSADIS
                                & SEIDEN, LLP

                              John J. Byrnes, Esq.
                              Attorneys for Defendant
                              1000 Woodbury Road, Suite 402
                              Woodbury, New York 11797
                              (516) 712-4000
                              Our File No.: 420-21465

22