UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

YENSY CONTRERAS, Individually, and On
Behalf of All Others Similarly Situated,

Plaintiff,

vs.

SCRUB DADDY, INC.,

Defendant.

————————————————————— x

Civil Action No.: 1:21-cv-09434 (JMF)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
<u>MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Pages**

I.     INTRODUCTION…………………….………………………………………...1

II.    STATEMENT OF FACTS……………………………………………………...3

III.   LEGAL STANDARDS……………………………………………………...4

     A.  Standards On a Motion Pursuant to
        Fed. R. Civ. P. 12(B)(1)…..………………………………………5

     B.  Standard for Article III Standing …………………………………….6

     C.  Standard to Assert Mootness …………………………………….6

     D.  Standard on A Motion Pursuant to
        Fed R. Civ. P. 12(B)(2)……………….………………………………..7

     E.  Standard on A Motion Pursuant to
        Fed R. Civ. P. 12(B)(6)……………….………………………………..8

IV.    ARGUMENT…………………………………………………………………9

     A. The Court has Subject Matter Jurisdiction ………..………..……….....7

         i.     Considering Extrinsic Evidence on a
             Rule 12(b)(1) Motion………..……….………..........................9

         ii.    The Complaint Properly Pleads an "Injury in Fact".......……...10

         iii.   The Complaint Sufficiently Pleads Plaintiff's "Intent
             to Return" ……………..........……………….........……………14

         iv.    No Mootness Since the Website's Access Barriers
             Persist……………..........…………….........…………………...15

     B. The Court has Personal Jurisdiction Over Defendant…………………18

     C. The Website is a Place of Public Accommodation..……………..........21

     D. The FACAC's NYCHRL Claim Survives as Well. ..……………........24

V.     CONCLUSION…………………………………….......……..……………....25

## **TABLE OF AUTHORITIES**

**Pages**

**CASES**

*Access Living of Metro Chi. v. Uber Techs., Inc*., 351 F. Supp 3d 1141 (N.D. Ill. 2018) ...................................................................................................... 24

*Access Now, Inc., v. Blue Apron, LLC*, Civil No 17-cv-116-JL, 2017 U.S. Dist. LEXIS 185112  (D.N.H. Nov. 8, 2017) ................................................... 24

*Already, LLC v. Nike, Inc*., 568 U.S. 85, 133 S. Ct. 721 (2013) ................................. 16

*Am. Girl, LLC v. Zembrka*, 2021 U.S. Dist. LEXIS 81897 (S.D.N.Y. April 28, 2021) .............. 20

*Angeles v. Grace Prods*., 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 (S.D.N.Y. Sept. 23, 2021) ...................................................................... 13, 15, 17

*Bassaw v. United Indus. Corp.*, No. 19-CV-7759 (JMF), 2020 U.S. Dist. LEXIS 157800 (S.D.N.Y. Aug. 31, 2020) ..................................................... 5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 8

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) ........................... 19

*Bullard v. Drug Policy All*., 18 Civ. 8081 (KPF), 2019 U.S. Dist. LEXIS 222854 (S.D.N.Y. Dec. 30, 2019) ......................................................................... 25

*Camacho v. Ne. Univ.*, 18 Civ. 10693 (ER), 2019 U.S. Dist. LEXIS 178306 (S.D.N.Y. Oct. 15, 2019) ....................................................................... 19

*Clemmons v. Hodes*, 15 Civ. 8975 (KPF), 2017 U.S. Dist. LEXIS 158550 (S.D.N.Y. Sept. 26, 2017) ........................................................................ 7

*Cortec Industries, Inc., v. Sum Holding L.P.*, 949 F.2d 42 (2d. Cir. 1991). ................. 25

*De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191 (S.D.N.Y. 2016) .................. 7

*Diaz v. Kroger Company,* 18. Civ. 7953 (KPF), 2019 U.S. Dist. LEXIS 93177 (S.D.N.Y. Jun. 4, 2019) ......................................................................... 18

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104 (2d Cir. 2010) ..................................... 9

*Doe v. Mutual of Omaha Ins. Co*., 528 U.S. 1106 (2000) ....................................... 24

*Dominguez v. Banana Republic, LLC*, 1:19-cv-10171-GHW, 2020 U.S. Dist. LEXIS 72193 (S.D.N.Y. April 23, 2020) ............................................................. 23

ii

*Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647 (S.D.N.Y 2017) ................................ 13

*Gonzalez v. City of New York*, 14 Civ 7721 (LGS), 2015 U.S. Dist. LEXIS 151810
(S.D.N.Y. Nov. 9, 2015) ............................................................................................... 9

*Gregory v. Daly,* 243 F.3d 687 (2d Cir. 2001) ............................................................. 5

*Harty v. Point Realty Inc.,* No. 20-2672-cv, 2022 U.S. App. LEXIS 7107 (2d Cir.
March 18, 2022) ...................................................................................................... 14

*HD Brous & Co. v. Mrzyglocki*, 03 Civ 8385 (CSH), 2004 U.S. Dist. Lexis 3095
(S.D.N.Y. Feb. 25, 2004) .......................................................................................... 3

*Jaquez v. Aqua Carpatica USA, Inc*., 2021 U.S. Dist. LEXIS 157918 (S.D.N.Y. Aug.
20 2021) ............................................................................................................ *10, 18*

*Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298 (2012) ................................ 7

*Kreisler v. Second Ave Diner Corp.*,731 F.3d 184 (2d Cir. 2013) ......................... 13, 15

*Lanier v. Bats Exch., Inc*., 838 F.3d 139 (2d Cir. 2016) ............................................. 9

*Martinez v. Mylife.com, Inc*., 21-cv-4779 (MBC), 2012 U.S. Dist. LEXIS 201585
(E.D.N.Y. Nov. 1, 2021) ......................................................................................... 21

*McBeth v. Porges*, 15-cv-2742 (JMF), 2018 U.S. Dist. LEXIS 133838 (S.D.N.Y.
Aug. 8, 2018) ........................................................................................................... 1

*McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184 (2d Cir. 2007) .......................... 25

*Mejico v. Alba Web Designs, LLC*, Civil Action No 7:20CV00039, 2021 U.S. Dist.
LEXIS 13354 (W.D. Va. Jan. 25, 2021) ................................................................... 24

Mercer v. Jericho Hotels, LLC, 19-CV-5604 (VSB), 2019 U.S. Dist. LEXIS 199897
(S.D.N.Y. Nov. 18, 2019) ................................................................................... 7, 17

*Metro. Life Ins. Co., v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ................ 7

*Morgan v. Joint Admin Bd*., 268 F.3 456 (7th Cir. 2001) ........................................ 24

*Nat'l Ass'n of the Deaf v. Netflix, Inc*., 869 F. Supp. 2d 196 (D. Mass. 2012) ............ 24

*Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012) ........ 5

*Novelaire Techs., L.L.C. v. Munters AB*, No. 13 Civ. 472 (CM), 2013 U.S. Dist.
LEXIS 168192 (S.D.N.Y. Nov. 21, 2013) ................................................................ 19

*Paguada v. YieldStreet, Inc.*, 20 Civ. 9254 (LGS), 2021 U.S. Dist. LEXIS 202311
(S.D.N.Y. Oct. 20, 2021) ................................................................................... 12, 17

*Pallozzi v. Allstate Life Ins, Co*., 198 F.3d 28 (2d Cir. 1999)................................................. 21, 22

*Quezada v. U.S. Wings, Inc.*, 20 Civ. 10707, 2021 U.S. Dist. LEXIS 234057
    (S.D.N.Y. Dec. 7 2021)........................................................................................... passim

*Romero v. 88 Acres Foods, Inc.,* 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040
    (S.D.N.Y. Jan.  18, 2022)........................................................................................ passim

*Romero v. Adagio Teas,* 20-CV-7422 (JMF) (S.D.N.Y. Jul. 7, 2021)................................. passim

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ............................................. 6

*Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 U.S. Dist. LEXIS 47073
    (S.D.N.Y. Mar. 21, 2019) .................................................................................................. 18

*Takeda Chem. Indus. v. Watson Pharm., Inc.*, 329 F. Supp. 2d 394 (S.D.N.Y. 2004).................. 9

*Thorne v. Formula 1 Motorsports, Inc.*, 19-cv-1077 (JPO), 2019 U.S. Dist. Lexis
    220080 (S.D.N.Y. Dec. 19, 2019).......................................................................................... 6

*TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021) ................................................................... 5

*Wilson v. Jord Inc.*, No. 20-CV-1899-LJV-JJM, 2022 U.S. Dist. LEXIS 58849
    (W.D.N.Y. Mar. 30, 2022)................................................................................................... 25

*Winegard v. Crain Comms., Inc.*, 20-cv-01509 (AJN), 2021 U.S. Dist. LEXIS 60964
    (S.D.N.Y. Mar. 30, 2021) ................................................................................................... 23

*Winegard v. Newsday LLC*, 19-CV-04420 (EI) (RER) (E.D.N.Y. Aug. 16, 2021)............... 21, 22

*Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438 (S.D.N.Y. 2018) ........................................... 15, 16

**STATUTES**

    42 U.S.C. § 12181 *et seq.* ...................................................................................... *passim*

    N.Y.C. Admin. Code § 8-101, *et seq.* ..................................................................................4

    New York C.P.L.R. §302 ......................................................................................8, 18

**RULES**

    Fed. R. Civ. P.  12(b)(1), 12(b)(2) 12(b)(6), ............................................................... *passim*

Plaintiff Yensy Contreras ("Plaintiff") respectfully submits this memorandum of law in opposition to defendant Scrub Daddy, Inc.'s ("Defendant") motion to dismiss ("Motion to Dismiss").

## I.    INTRODUCTION

The Motion to Dismiss should be denied as it cites the wrong pleading standards.

*First*, Defendant relies entirely on its motion to dismiss ***the initial complaint***, and utterly fails to address ***the First Amended Class Action Complaint's*** ("FACAC") new factual allegations, including: (i) the four specific dates Plaintiff accessed the website (¶¶2, 22); (ii) Plaintiff specifying the particular product he sought to purchase: a Style Collection Scrub Daddy Cleaning Brush (¶¶2, 3, 24); and (iii) the list of five specific barriers that Plaintiff encountered as of February 28, 2022 (over two weeks after Defendant filed its initial motion) (¶¶3, 23).  By failing to recognize the FACAC's allegations, Defendant is forced to proffer boiler plate objections and arguments.[1]

*Second*, Defendant's papers fail to acknowledge this Court's decision in *Romero v. Adagio Teas,* 20-CV-7422 (JMF), at 4:15-17 (S.D.N.Y. Jul. 7, 2021).[2] Kroub Decl., Ex A., which squarely addresses two issues raised in the Motion to Dismiss: pleading an injury in fact and mootness.  Had Defendant read that opinion, they would not be rehashing arguments this Court already rejected.

As in *Adagio Teas*, Defendant here attempts to raise factual disputes based on untested extrinsic evidence.  But whether extrinsic evidence of compliance is characterized as a standing or

---

[1]    Plaintiff respectfully portends that Defendant will have no choice but to raise new challenges in its reply papers, but any such anticipated arguments would need to be ignored. *See McBeth v. Porges*, 15-cv-2742 (JMF), 2018 U.S. Dist. LEXIS 133838, at *14, n. 2 (S.D.N.Y. Aug. 8, 2018) ("[i]t is well established…that a party may not raise a new argument in a reply brief.").

[2]    A true and correct copy of this Court's decision in *Adagio Teas* is attached as Exhibit A to the Declaration of Edward Y. Kroub in support of Plaintiff's opposition to Defendant's Motion to Dismiss ("Kroub Decl.").

mootness argument, that sort of factual dispute cannot be resolved at the motion to dismiss stage. *See Adagio Teas,* 20-CV-7422 (JMF), at 4:15-17.   This Court's ruling has been reaffirmed since Defendant filed its motion to dismiss by Judge Failla's ruling in *Sanchez v. Welcome Skateboards*. Kroub Decl., Ex. B at 19:8-11.

Defendant's "evidence" of remediation is unpersuasive in this case just as it was in *Adagio* and *Welcome Skateboards*, since its chief evidence is an untested statement from the Defendant's chief operating office.  As in *Adagio* and *Welcome Skateboards*, Plaintiff has put forth competent expert evidence rebutting the contention that Defendant's Website is currently compliant.

*Third*, this Court has personal jurisdiction because Defendant's Website is an interactive one which transmits goods directly to New York customers.  Such a website is sufficient to confer personal jurisdiction in a case alleging that the website violated the ADA. For all of Defendant's arguments, none of its moving papers contest the fact that Defendant sells its cleaning products directly to New Yorkers, which Defendant affiant himself admits.  These sales, which Defendant admits to, are sufficient to confer personal jurisdiction.

*Fourth*, the Motion to Dismiss simply chooses to ignore the clear and unambiguous precedents of the Southern District of New York that a website is, unequivocally, a place of public accommodation.  This precedent had been well established since 2017 in this district has continued uninterrupted through January 2022, when it was reaffirmed by Senior Judge Kimba Wood in *Romero v. 88 Acres Foods, Inc.,* 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).  This definitive holding was decided nearly a month before Defendant's motion, yet Defendant ***never mentions it***.  Indeed, this decision vigorously analyzed the two Eastern District cases which form the core of Defendant's argument, as well as the history of this question and other circuits.   Judge Wood unabashedly deconstructed and discounted the same logic

Defendant has put forth as leading to an "absurd result."   Failure to contend with this decision, at a minimum, renders Defendant's Motion to Dismiss misleading, and at a maximum, potentially sanctionable.[3]   Defendant's argument on this point, to the extent it contends with the Southern District's caselaw at all, is nothing more than boilerplate repetition that seven separate Southern District Judges have been uniformly "getting it wrong" for years.

*Finally*, because Defendant has failed to establish grounds for dismissal of Plaintiff's ADA claims, Defendant's attempts to dispose of this Court's supplemental jurisdiction over the New York City Humans Right Law ("NYCHRL") claim also fails.

Accordingly, Defendant's Motion to Dismiss should respectfully be denied in its entirety.

## II.   STATEMENT OF FACTS

Defendant is an online retail company that owns and operates the Website, scrubdaddy.com ("Website").  ¶¶2, 20.  The Website offers goods for sale to consumers in New York including, but not limited to, various branded cleaning sponges and brushes, as well as associated cleaning accessories. ¶20.  Plaintiff is a visually-impaired and legally blind person who uses screen-reading software in order to read website content using his personal computer. ¶¶1, 22.  Plaintiff made several visits to the Website, including on November 14, 2021, December 21, 2021, December 28, 2021, and as recently as February 28, 2022.  ¶2.  Plaintiff attempted to transact business on Defendant's Website by attempting to purchase cleaning equipment, specifically, a Style Collection Scrub Daddy cleaning brush.  ¶24.  Plaintiff was unable to successfully complete a purchase because the Website was not compliant with the current ADA accessibility standards and

---

[3]   *See HD Brous & Co. v. Mrzyglocki*, 03 Civ 8385 (CSH), 2004 U.S. Dist. Lexis 3095 at *52 (S.D.N.Y. Feb. 25, 2004) (counsel's citation to out of circuit persuasive authority, without citing to significant contrary authority within the circuit of the sitting court, was held to be a "distorted" argument subject to Rule 11).

contained/contains specific issues both at the time Plaintiff browsed the Website and as of the date

of the filing of the FACAC.   ¶25.   Plaintiff encountered multiple access barriers that denied

Plaintiff full and equal access to the services offered to the general public on the Website. ¶¶9, 22,

25. These barriers include, without limitation (collectively, the "Access Barriers"):

- On the homepage, the screen reader begins to read all text on the page simultaneously, delaying Plaintiff's ability to navigate the website as a sighted person would;

- The screen reader fails to read images or icons of the page, delaying Plaintiff's ability to navigate the website as a sighted person would and impeding Plaintiff's ability to make an informed choice as to products to purchase;

- The screen reader is unable to read text on promotional images, impeding Plaintiff's ability to make an informed decision about products being promoted for sale;

- The screen reader stops reading mid-sentence, delaying Plaintiff's ability to navigate the website as a sighted person would; and

- The screen reader does not indicate when an item has been added to the "cart" function, delaying Plaintiff's ability to complete a purchase as a sighted user would.

    ¶¶2, 23.

While Plaintiff was denied equal access to the Website, Plaintiff remains hopeful that the

Access Barriers will be cured, as he intends to return to the Website to purchase a Style Collection

Scrub Daddy cleaning brush from Defendant as soon as the Accessibility Barriers are eliminated.

¶24.

Based on these allegations, the FACAC adequately alleges Defendant's violations of 42

U.S.C. § 12181, *et seq*. – Title III of the ADA, and the NYCHRL, N.Y.C. Admin. Code § 8-101,

*et seq*.

## III.    LEGAL STANDARDS

The Second Circuit cautions courts against prematurely dismissing complaints of civil rights violations.  *See Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012). Similarly, in reviewing standing under the ADA, a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the Act. *See Sanchez v. NutCo., Inc*., 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *5 (S.D.N.Y. Mar. 22, 2022) (citations omitted).  Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation.  *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204 (2021).

### A.    STANDARD ON A MOTION PURSUANT TO FED. R. CIV. P. 12(B)(1)

As this Court held, when examining a Fed. R. Civ. P. 12(b)(1) motion, a court must "take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively." *Bassaw v. United Indus. Corp.*, No. 19-CV-7759 (JMF), 2020 U.S. Dist. LEXIS 157800, at *4 (S.D.N.Y. Aug. 31, 2020) (internal citations omitted). The burden of providing subject matter jurisdiction by a preponderance of the evidence is borne by plaintiff. *Id.* The Southern District of New York has held in ADA website accessibility cases that a complaint need not contain detailed factual allegations to survive a motion to dismiss. *Jaquez v. Dermpoint*, 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *4 (S.D.N.Y. May 20, 2021). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court

accepts all material factual allegations in the complaint as true but does not presume the truthfulness of the complaint's jurisdictional allegations. *See Quezada v. U.S. Wings, Inc.*, 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021).

**B.     STANDARD FOR ARTICLE III STANDING**

A plaintiff pleads a sufficient injury for Article III standing by "show[ing] that he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016). "An injury is particularized when it affect[s] the plaintiff in a personal and individual way. . . [a]n injury is concrete when it actually exists or, put another way, when it is real rather than abstract. Notably, this is a low threshold, and the plaintiff need not be capable of sustaining a valid cause of action." *Bassaw*, 2020 U.S. Dist. LEXIS 157800, at *6.

To satisfy standing in an ADA website accessibility action, a plaintiff must allege certain facts, including: (i) when they attempted to access the website; (ii) what they were attempting to do on the website; (iii) the specific barriers that prevented them from gaining access; and (iv) how they intend to utilize the website in the future. *See Welcome Skateboards*, Ex. B to the Kroub Decl., at 10:15-21.

The elements to plead a claim under the NYCHRL in a website-accessibility action are substantively similar to the above standard. The NYCHRL is given an "independent liberal construction analysis in all circumstances" given its similar wording to the ADA, as well as the fact that "federal and state civil rights laws provide a floor below which the City's Human Rights law cannot fall." *Thorne v. Formula 1 Motorsports, Inc.*, 19-cv-1077 (JPO), 2019 U.S. Dist. Lexis 220080, at *7 (S.D.N.Y. Dec. 19, 2019). Thus, it follows perforce that since the FACAC properly pleads a claim under the ADA, it also properly states a claim under the NYCHRL. *Id*.

-6-

### C.     STANDARD TO ASSESS MOOTNESS

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). There is a two-part test to determine whether a defendant has met its formidable burden of indicating whether a case is moot: (i) that it has completely and irrevocably eradicated the effects of any alleged violation; and (ii) that there are no reasonable expectations that the alleged violation will recur. *See Mercer v. Jericho Hotels, LLC*, 19-CV-5604 (VSB), 2019 U.S. Dist. LEXIS 199897, at *7 (S.D.N.Y. Nov. 18, 2019). Specifically, where noncompliance can result from an easily changeable policy, as opposed to a physical alteration, a court cannot simply say that a defendant has made an affirmative showing that the continuation of their alleged ADA violations is nearly impossible. *See De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016) (internal citations omitted).   As this Court has held, in an ADA website accessibility case, where there is a clear factual dispute as to whether multiple barriers still allegedly exist on a website, the case is not mooted, but must be tested in discovery. *See Adagio Teas*, Ex.  A to the Kroub Decl., at 5:6-15; *see also Quezada v. U.S. Wings, Inc.*, 2021 Dist. LEXIS 234057, at *8.

### D.     STANDARD ON A MOTION PURSUANT TO FED. R. CIV. P. 12(B)(2)

"To survive a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, a plaintiff has the burden of establishing that the court has jurisdiction over the defendant." *Clemmons v. Hodes*, 15 Civ. 8975 (KPF), 2017 U.S. Dist. LEXIS 158550, at *18-*19 (S.D.N.Y. Sept. 26, 2017) (*citing Metro. Life Ins. Co., v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). When considering a Rule 12(b)(2) motion to dismiss, a court must construe all of the

complaint's allegations as true and resolve all doubts in its favor. *See Nutco,* 2022 U.S. Dist. LEXIS 51247 at *9.

Under New York C.P.L.R. §302(a)(1), a court determines whether it has personal jurisdiction by examining: (1) whether the defendant transacts any business in New York; and (2) whether the cause of action arises from such a business transaction. *See Camacho v. Vanderbilt Univ.*, 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202, at *7 (S.D.N.Y., Dec. 4, 2019) (*quoting* N.Y. C.P.L.R. § 302(a)(1)); *see also Paguada v. Athena Allergy, Inc.,* Kroub Decl., Ex. C at 11:12-12:12.

To determine whether the operation of a website amounts to the transaction of business in New York, courts typically look at the degree of interactivity offered by the website. *See Camacho*, 2019 U.S. Dist. LEXIS 209202, at *12. If the website falls on the far end of the spectrum by directly allowing the purchase of goods or services, then the website is "fully interactive" and can serve as a basis for personal jurisdiction. *Id.* at *13.

### E.    STANDARD ON A MOTION PURSUANT TO FED. R. CIV. P. 12(B)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Nutco*, 2022 U.S. Dist. LEXIS 51247, at *14-*15 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff properly pleads such facial plausibility by including "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id* at *15. All reasonable inferences are drawn in the plaintiff's favor. *Id.* The court's review is "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits and any documents incorporated in the complaint by reference." *Id.* at *15-*16. To survive dismissal, "plaintiff must provide the grounds upon which his claims rest through factual

allegations sufficient to raise a right to relief above the speculative level." *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016) (internal citations omitted).

## IV.   ARGUMENT

### A.  THE COURT HAS SUBJECT MATTER JURISDICTION

(i)        Considering Extrinsic Evidence on a Rule 12(b)(1) Motion

Examining extrinsic evidence is limited under Rule 12(b)(1) where a challenge to jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits. *See Takeda Chem. Indus. v. Watson Pharm., Inc.*, 329 F. Supp. 2d 394, 402 (S.D.N.Y. 2004) (citation omitted).  In considering such a motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *DiFolco v MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  It is inappropriate, however, to convert a motion to dismiss to one for summary judgment where, as here, a plaintiff has not had the opportunity to obtain discovery. *See Gonzalez v. City of New York*, 14 Civ 7721 (LGS), 2015 U.S. Dist. LEXIS 151810, at *12 (S.D.N.Y. Nov. 9, 2015).

As this Court ruled and was reconfirmed by Judge Failla, competing affidavits regarding factual issues such as compliance of a website reinforce the conclusion that discovery is necessary to determine defendant's compliance with the ADA or lack thereof. *See Adagio*, Ex.  A to Kroub Decl. at 5:8-22 (internal citations omitted); *see also Welcome Skateboard*, Ex. B to Kroub Decl. at 19:8-11 ("Discovery will disclose whether plaintiff has actually raised issues worthy of a trial, but for now, this Court must conclude that he has pleaded adequate claims.").

The merits of this case rest on whether access barriers exist on the Website.  Defendant asserts they do not, while Plaintiff, after revisiting the website following Defendant's motion,

affirms they do.  Defendant's jurisdictional challenge is intertwined with the merits of the case and uses the extrinsic evidence to deny the core facts in this case.  *See, e.g.*, O'Brien Declaration at ¶22 ("It is my understanding that as of the date of this Declaration, the Website is current in compliance. . ."); *see also* Def. Mem. at 12.  These unsupported denials, however, cannot form the basis of dismissal when faced with the well-pled allegations in the FACAC.  Defendant should only be allowed to present this evidence after Plaintiff has had the opportunity to scrutinize it and conduct discovery.  Otherwise, Defendant's declarations, which rely on vague assertions, have no more probative value than a standard answer denying the FACAC's allegations, and like an answer, should proceed to discovery.

Finally, as described more fully *infra*, Plaintiff has submitted (aside from allegations concerning his own personal experience) competing expert testimony that confirms the Website's access barriers existed and persist even after Defendant filed its motion.  <u>*See* Section (iv) *infra*</u>.

(ii)        <u>The Complaint Properly Pleads an "Injury-in-Fact"</u>

The FACAC properly pleads that Plaintiff was injured when he encountered Access Barriers that denied him full and equal access to the Website multiple times and now deter Plaintiff on a regular basis from accessing the Website in the future.  ¶¶9, 22-24.  To satisfy standing in an ADA website accessibility action, a complaint must allege: (i) when plaintiff attempted to access the website; (ii) what plaintiff attempted to do on the website; (iii) the specific barriers that prevented plaintiff from gaining access; and (iv) how plaintiff intends to utilize the website in the future. *See Welcome Skateboard*, Ex. B to the Kroub Decl., at 10:15-21; *cf. Jaquez v. Aqua Carpatica USA, Inc*., 2021 U.S. Dist. LEXIS 157918 (S.D.N.Y. Aug. 20 2021) (plaintiff did not describe any product he was interested in.).

The FACAC meets all these requirements; namely, it pleads: (i) Plaintiff visited the Website on November 14, 2021, December 21, 2021, December 28, 2021 and February 28, 2022 (¶¶2, 22); (ii) Plaintiff attempted to buy a Style Collection Scrub Daddy cleaning brush (¶¶3, 24); (iii) the specific website functions that prevented Plaintiff from completing a purchase as a sighted person would, including the homepage's coding, images on the website, promotional images, and the "cart" (¶¶23(a)-23(e)); (iv) that these deficient pages and functions directly prevented him from completing a purchase which would otherwise be available to sighted individuals (¶25); and (v) how Plaintiff intends to utilize the website in the future – *i.e.*, to transact business there as soon as the accessibility barriers are cured.  ¶24.

The FACAC is thus similar to the surviving complaints in recent cases before Judges Oetken and Failla (who denied similar motions to dismiss).  In *Nutco*, Judge Oetken denied defendant's motion to dismiss because the allegations that pleaded an injury: being unable to purchase pistachio nuts and other snack foods, take advantage of discounts and promotions and understand product details, because of barriers on the website.  *See Id*. at *5.  The Court found these injuries were traceable to the Defendant because of deficient website functions, including "because the Website was not compatible with his screen-reading software, and the website provided no indication when an item was successfully added to his online cart." *Id*. The FACAC specifically lists many of the same access barriers.  Specifically, the FACAC pleads that the Website contained site elements, such promotional images, and the "cart" functions, which were not properly labeled by Defendant to integrate with Plaintiff's screen reader.  ¶¶2, 23.

More recently, in *Welcome Skateboard*, an ADA plaintiff likewise listed seven specific barriers that prevented his purchase from the Website, which the Court held, along with the consequent deterrence to the plaintiff, constituted a sufficient injury to confer standing.  Given the

similarity of the barriers pled in the FACAC to the barriers found in *Nutco* and *Welcome Skateboards*, Defendant's argument regarding failure to plead an injury is unavailing.

Likewise, a plaintiff that cannot make an informed choice about the products suffers a well pleaded threat of future harm. *See Camacho*, 2019 U.S. Dist. LEXIS 209202, at *31. Plaintiff here has pled this ongoing harm – specifically, that since the descriptions of the items he wished to purchase were not accessible on the Website, his ability to make an informed choice was impeded. ¶2(b)-2(c).

The FACAC further lays out that these specific functions and deficient pages directly prevented Plaintiff from completing a purchase in a manner which would otherwise be available to sighted individuals. ¶25. These technical barriers, which discriminated against Plaintiff by denying him a full and equal opportunity to use the Website, are similar to those that have previously be found to satisfy the relatively low pleading standard. *See Jaquez*, 2021 U.S. Dist. LEXIS 96067, at *4-*5 (noting broken links, inaccurate headings and inability to add items to the "cart" were sufficient for pleading); *see also Paguada v. YieldStreet, Inc.*, 20 Civ. 9254 (LGS), 2021 U.S. Dist. LEXIS 202311, at *11 (S.D.N.Y. Oct. 20, 2021) (rejecting defendant's arguments that technical issues listed – including links the screen reading software could not differentiate – were "foot faults" rather than ADA violations preventing access to the website).

Similarly, in *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *26, Judge Failla, held that the plaintiff pleaded a concrete injury, deterrence where:

> [Plaintiff] was unable to access certain portions of the Website's publicly available content because of his disability. Specifically, Plaintiff states that he was unable to navigate the Website because its navigation tabs were incompatible with his screen-reading software, and unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software. Plaintiff has also alleged that the Website's access barriers regularly deter him from accessing the website. The Second Circuit has made clear that deterrence constitutes an injury under the ADA.

Notably, it is sufficient for a plaintiff to plead the specific barriers that prevented them from gaining access to a website and how they intend to use the website in the future—but it is not necessary for a proper pleading to state the exact product a plaintiff intends to buy.  *Angeles v. Grace Prods*., 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, at *3-*4 (S.D.N.Y. Sept. 23, 2021) ("[plaintiff] was (and is) interested in purchasing Defendant's beauty products.").  This is directly contrary to Defendant's assertion that the FACAC fails to plead a single item sold on the website. Def. Mem. at 3.  Furthermore, Plaintiff need not indicate the "internet platform he actually used to access Defendant's website" or that the barriers were not "the result of clear user error." Def. Mem.  at 4-5.  There is no caselaw to support that proposition, and Defendant does not cite to any.[4] Thus the FACAC is sufficient, and Defendant is merely trying to reinvent the pleading standard.

The FACAC describes both what Plaintiff intended to purchase (a Style Collection scrub Daddy cleaning brush), and how he intends to utilize the website in the future (to transact business there as soon as the accessibility barriers are cured.) ¶24; *cf.* Def. Mem.  at 4.  The FACAC pleads

---

[4]     Likewise, Defendant's assertion that its operation of an alternate means (a phone line) is sufficient to show Plaintiff was not injured under the ADA is simply not correct. Def. Mem. at 9. It does not change the fact that Plaintiff encountered barriers on the website. Courts have held that a single encounter with an accessibility barrier constitutes unlawful discrimination under the ADA if it impairs a plaintiff's full and equal access. *See Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y 2017) (finding that even where barriers in question have not completely prevented disabled plaintiffs from visiting a public accommodation, to, plaintiffs still have a valid ADA claim when the barriers render their use of the facility more difficult, burdensome, or dangerous, even if they can visit the facility).  The requirement to provide equal access is proactive on the public accommodation, not on a disabled individual to bring up piecemeal barriers to full and equal enjoyment as they encounter them. *See Kreisler v.  Second Ave. Diner Corp.*,731 F.3d 184, 189 (2d Cir. 2013). Thus, the existence of any phone line is a red herring.

recognized injuries (unequal access, inability to make an informed decision and deterrence) – as well as the specific causes – and properly pleads an injury in fact.

(iii)    <u>The Complaint Sufficiently Pleads Plaintiff's "Intent to Return"</u>

Contrary to Defendant's arguments, the FACAC pleads an intent to return.  Specifically, the FACAC states that "Plaintiff was highly interested in purchasing a Style Collection Scrub Daddy cleaning brush offered by Defendant. Plaintiff remains hopeful that the accessibility barriers will be cured expeditiously, as Plaintiff intends to return to the website in order to transact business there as soon as the accessibility barriers are cured." ¶24. This is sufficient for standing.

In a website accessibility action under the ADA, the standard for establishing standing under 12(b)(1) is less burdensome than the standard regarding barriers at a physical location, requiring only a reasonable inference that a plaintiff intended to return to the website. *See U.S. Wings*, 2021 U.S. Dist. LEXIS 234057, at *9 (citing *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *11).[5]

In *U.S. Wings*, Judge Ramos found that an ADA website plaintiff had sufficiently shown intent to return, and thus an ongoing injury, by pleading two things: (i) specific intent to return to the website if accessibility issues were mediated; and (ii) that Defendant's website offered products and services nationwide.  Thus, the Court reasoned, "As websites are easily accessible at any moment, [plaintiff]'s claim that he will return to the website to make a purchase once the issues are remedied is sufficient to satisfy this prong of standing." *Id*. at *11. As such, factual

---

[5]    *But see Harty v. Point Realty Inc.,* No. 20-2672-cv, 2022 U.S. App. LEXIS 7107 (2d Cir. March 18, 2022).  The plaintiff in *Harty*, unlike in this case, alleged that the barriers on the website impeded him, a Florida resident, from booking a physical hotel room in New York State.  Unlike physically travelling to a hotel, the only barrier to utilizing Defendant's virtual services instantaneously in his own home in New York are the barriers on the website themselves.

considerations of an intent to return regarding a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021) (noting plaintiff had failed to establish what he wished to purchase with a gift card and why this was preferable to cash or credit); Def. Mem. at 10. Both criteria for a website case are met here. Plaintiff has specifically indicated an intent to return once the technical barriers are removed, and Defendant itself notes that it sells products throughout the United States, including to New Yorkers. Def. Ex. D ¶16. As such, this prong of standing is met.[6]

(iv)    <u>No Mootness Since the Website's Accessibility Barriers Persist</u>

Defendant, again relying on inadmissible extrinsic hearsay evidence, claims that "[Defendant]'s immediate response to Plaintiff's alleged concerns eviscerates [the claim] … that the alleged discriminatory treatment will continue." Def. Mem. at 8. Defendant's response is not sufficient to defeat standing on mootness grounds.

A defendant can moot plaintiff's ADA claim by providing evidence that makes it absolutely clear that the alleged wrongful behavior ceased and will not recur. *See Angeles*, 2021 U.S. Dist. LEXIS 182317, at *7. This high standard is necessary because "[o]therwise, upon dismissal a defendant could simply resume its conduct." *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d

---

[6]    Notably, there is no requirement that a Plaintiff visit a public accommodation any specific number of times to establish a plausible intent to return given the ongoing injury of deterrence. Specifically, in the case of *Kreisler v. Second Ave Diner Corp.*,731 F.3d 184 (2d Cir. 2013), the Second Circuit found that the plaintiff had suffered an injury under the ADA despite having *never* attempted to enter the public accommodation. *Id.* at 188. Instead, the Second Circuit found standing given that a barrier had deterred plaintiff from entering the public accommodation, plaintiff's proximity to the physical location, and stated intent to return should the barrier be removed. *Id.* As discussed in *U.S. Wings*, this physical proximity is not required in website cases if the Defendant can demonstrate that goods or services could be purchased online by a plaintiff but for the barriers. *U.S. Wings.*, 2021 U.S. Dist. LEXIS 234057 at *10-*11.

438, 441-42 (S.D.N.Y. 2018) (*citing Already, LLC v. Nike, Inc*., 568 U.S. 85, 91, 133 S. Ct. 721 (2013)).

The Website is still in violation of the WCAG standards and the ADA.  Defendant has not sufficiently established (let alone even introduced admissible evidence suggesting) that it has remediated the Website and that the violations will not recur. As set forth in the Declaration of Robert D. Moody, who examined the Website on April 12, 2022 (over two months after Defendant's instant motion was submitted), "issues with the identified website do exist and moreover, those issues are a barrier to individuals with low to no vision." *See* Declaration of Robert D. Moody, ("Moody Decl."), Ex. D to the Kroub Decl., at ¶7, These ongoing barriers include:

- The logo found on this site, which acts as a link to the homepage, is not properly labeled. The screen reader does not relay to the user the logo's purpose, which is creating a way to return to the site's homepage.

- Country selector button is inaccessible. This may bar the user from accessing the appropriate site information based on their location or either United Stated or Canada.

- At the header of the website, the Buy Now link is properly labeled but it is inaccessible when navigating with a keyboard. The Shopping Cart button is mislabeled as amount of money in the cart and not the function of the shopping cart.

- Product prices are not labeled to integrate with the screen reader. The information is not accessible when using the keyboard for navigation. Without providing proper information, this would create a barrier for a visually impaired user.

- The abbreviation "CT" is mislabeled. The information relayed should be count as in the number of pieces in the product itself.

- The quantity "increase" and "decrease" buttons are mislabeled as "hyphen button product's name quantity spinner one minimum one maximum one plus sign button" respectively. The poor labeling creates a barrier to the website's main functions and elements.

- Items placed in the shopping cart are not labeled to integrate with the screen reader. Once inside the shopping cart, the price of the items to purchase, subtotal, shipping, and total are not labeled. This information is not relayed to the user. Thus, bars the user from confirming the items in their shopping cart before purchase.

- There is no notification that an item has been added to the shopping cart. This bars the user from confirming the action was executed.

- Throughout the website, there is text providing information. For example, on the "Support & Discover / FQAs" page, the questions are mislabeled as "link" and the answers are not labeled to integrate with the screen reader. The information is skipped over to the next available link, heading, or button as the text is not accessible. The site moves directly to the active buttons and fails to describe or reference the content or context.

- There is contact information at the footer of the website, the company physical address and telephone number are inaccessible. Due to the lack of description the user is not able to contact the business as the address and telephone number are not labeled to integrate with the screen reader. Moody Decl. at ¶8.

Mr. Moody concluded:

It is my expert opinion and with a high degree of scientific certainty the website https//scrubdaddy.com/ belonging to Defendant, Scrub Daddy Inc. has defects, can and will continue to create problems for visually disabled persons, such as the Plaintiff and these defects act as a barrier to the effective use and enjoyment of the site for persons with low to no vision.  Moody Decl. at ¶11.

Thus, Plaintiff's expert has identified ongoing Access Barriers inhibiting the equal use of the Website by the visually impaired.  As this Court noted in response to a similar affidavit submitted by Mr. Moody at the motion to dismiss stage contesting the accessibility of a defendant's website, when both sides submit affidavits arguing opposite sides of a factual question, such as whether the website is accessible, the Defendant's position is properly tested in discovery. *See Adagio*, Ex.  A to the Kroub Decl., at 5:6-11.  Defendant's extrinsic evidence is ***at best*** analogous to an answer denying the allegations of the FACAC, and, thus, this case should proceed to discovery.  *See Mercer*, 2019 U.S. Dist. LEXIS 199897, at *8 (holding that it is insufficient to moot a case based on a "reed thin" assertion by the owner of a public accommodation that accessibility barriers have been remedied). Other courts have likewise found Mr. Moody's reports persuasive in rejecting mootness.  *See Nutco*, 2022 U.S. Dist. LEXIS 51247; *YieldStreet*, 2021 U.S. Dist. LEXIS 202311; *U.S. Wings*, 2021 U.S. Dist. LEXIS 234057; *Angeles*, 2021 U.S. Dist.

-17-

LEXIS 182317; *Aqua Carpatica*, 2021 U.S. Dist. LEXIS 157918; and *Welcome Skateboards* Ex. B to the Kroub Decl. This stands in sharp contrast to the cases cited by Defendant, where the defendant submitted *uncontested* evidence that its website was accessible.  *See Adagio*, Ex.  A to the Kroub Decl., at 6:8-12 (noting the plaintiff in *Diaz v. Kroger Company*, "did not dispute the factual assertions defendant's affiant made regarding defendant's efforts at ADA compliance.") (citations omitted); *cf.* Def. Mem.  at 10.

As demonstrated by the Moody Declaration, ***barriers to access continue to persist*** even after the filing of the instant Motion to Dismiss.  *See Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 U.S. Dist. LEXIS 47073 (S.D.N.Y. Mar. 21, 2019) (rejecting mootness argument where plaintiff identified continued barriers to accessing certain videos on defendant's website); *see also Del-Orden v. Bonobos, Inc*., 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec 20, 2017) (holding same, where complaint alleged, and court's review of website confirmed, at least one continued barrier to access). Given that the FACAC pleads ongoing violations, Defendant has not sufficiently met its burden of establishing that the alleged barriers are completely eradicated and its mootness argument fails.

## B.  THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

This Court has personal jurisdiction over Defendant as the New York long-arm statute provides for an exercise of personal jurisdiction "over any non-domiciliary…who in person or through an agent…transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1).  A highly interactive website, like the one Defendant operates, meets the requirements of personal jurisdiction under C.P.L.R. § 302(a). For a website to confer jurisdiction, "[s]omething more [than visibility in the forum state] is necessary, such as interactive features which allow the successful online ordering of the defendant's

products." *Novelaire Techs., L.L.C. v. Munters AB*, No. 13 Civ. 472 (CM), 2013 U.S. Dist. LEXIS 168192, at *10-*11 (S.D.N.Y. Nov. 21, 2013).

Specifically, the degree of interactivity and the commercial nature of the exchange of information that occurs on the site is indicative of whether a court can exercise personal jurisdiction. *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *12. If a website "allows for transactions to be completed, for example, by allowing the purchase of goods or services, then the website is fully interactive and can support the exercise of New York's jurisdiction over those transactions." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007)); *Camacho v. Ne. Univ.*, 18 Civ. 10693 (ER), 2019 U.S. Dist. LEXIS 178306, at *8 (S.D.N.Y. Oct. 15, 2019). While a website's availability in New York cannot alone establish personal jurisdiction, personal jurisdiction exists where the plaintiff establishes a reasonable probability that the Website has been actually used to effect commercial transactions with customers in New York. *See U.S. Wings*, 2021 U.S. Dist. LEXIS 234057, at *18 ("[Defendant]'s website is interactive, as it allows for the purchase and exchange of goods, including to New York, and therefore confers personal jurisdiction."); *see also Paguada*, Ex. C to the Kroub Decl. at p. 12:2-12.

Senior Judge Kimba Wood comprehensively analyzed the recent development in this area in *88 Acres*, 2022 U.S. Dist. LEXIS 9040. An interactive website, which transacts business only with sighted customers, but not visually impaired ones, meets the two requirements of personal jurisdiction under the long-arm statute: transacting business within New York, and a substantial claim of discrimination that occurred in New York. *Id*. at *8. Contrary to Defendant's assertion, the location of the website's owner, or whether the website targets a particular state, is irrelevant. Personal jurisdiction is established under the long-arm statute by evaluating how a business conducts its commercial activities with different classes of New York consumers.

Aside from the interactivity of the Website, "[p]ersonal jurisdiction can be exercised only if Defendant used the Website to "purposely avail" itself of the forum state." *Id*. at *7. Here, as in *88 Acres*, the Website "is used to effect commercial transactions with customers in New York. This purposeful availment of the New York market is sufficient to meet the 'transacting business' prong for personal jurisdiction pursuant to New York's long-arm statute." *Id*.

The fact that a website does not specifically advertise in or target business from the State of New York does not refute the presumption of personal jurisdiction when that website's products are readily available for sale to New York customers, and the website's goods are delivered to the state. *See Paguada*, Ex. C to the Kroub Decl. at 13:9-16; *cf. Am. Girl, LLC v. Zembrka*, 2021 U.S. Dist. LEXIS 81897 (S.D.N.Y. April 28, 2021) (defendants had a policy of not shipping products from China to the United States and refunded any money paid by a potential American customer); Def. Mem. at 16.

Defendant makes a big to do that it ***doesn't target*** New York consumers. That's not really important considering that it does ***deliver*** goods to New York consumers. Indeed, Defendant's business ties to New York are demonstrated ***by its own motion papers***. Specifically, the O'Brien declaration itself admits "Scrub Daddy ships products to customers in all 50 State and internationally." O'Brien Declaration at ¶16; *see also Nutco*, 2022 U.S. Dist. LEXIS 51247 at *11-*12 ([Plaintiff] alleges that the Website offers it goods to consumers in New York, which neither [defendant] contests…Further, because [plaintiff] alleges he attempt to access the Website to make a purchase [defendant] is within reach of New York's long-arm statute since the case arises from a business transaction."). Since Plaintiff attempted to complete a transaction in New York, and Defendant does not contest that it delivers products to other New Yorkers, this Court clearly has personal jurisdiction.

### C.  THE WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION

The precedents established in this District are unequivocal: websites in and of themselves are places of public accommodations under the ADA.  This reasoning, supported by seven other S.D.N.Y. district judges, logically flows from the precedent of the Second Circuit, which has stated that Title III's mandate ensures "full and equal enjoyment of the goods [and] services . . . of any place of public accommodation" to disabled individuals, which suggests that "the statute was meant to guarantee [disabled individuals] more than mere physical access." *Pallozzi v. Allstate Life Ins, Co*., 198 F.3d 28, 32 (2d Cir. 1999).  Based on this reasoning, courts in this District and throughout this Circuit have emphasized that it is the sale of goods and services to the public, and not relation to a location, physical or otherwise, where a sale is executed, that determines whether the protections of the ADA apply.  It's notable that while citing to the *Lopez* case in support of its argument on statutory construction, Defendant's papers ***ignore a central ruling***: that "a company's website is essentially a stand in for its brick-and-mortar business establishments." *Lopez*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838.  at *15 (S.D.N.Y. March 8, 2021); *cf*. Def. Mem at 19.

While many other districts have issued rulings on this matter, Senior Judge Wood in *88 Acres* issued a comprehensive rejection of the "brick-and-mortar" standard.  This decision unequivocally held that "websites qualify as places of public accommodation, albeit electronic ones, and as such are required to provide equal services to visually impaired and sighted people." *88 Acres Foods Inc.,* 2022 U.S. Dist. LEXIS 9040 at *16.  After a thorough analysis of foreign circuits, as well as the E.D.N.Y. decisions in *Martinez v. Mylife.com, Inc*., 21-cv-4779 (MBC), 2012 U.S. Dist. LEXIS 201585 (E.D.N.Y. Nov. 1, 2021) and *Winegard v. Newsday LLC*, 19-CV-

04420 (EI) (RER) (E.D.N.Y. Aug. 16, 2021), Judge Wood wrote "[t]his Court does not find *Wingard's* reasoning compelling." *Id.*

Specifically, looking to the language of Section 12181(7) of the ADA, Judge Wood found that in addition to listing physical places such as restaurants, hotels, and gymnasiums as covered accommodations, other entities such as "travel services" were listed. *Id.* at *17-*18. Additionally, Judge Wood noted that the relevant section lists "other sales or retail establishments" as covered entities. These additions must indicate that non-physical retailers are covered for otherwise, *88 Acres* held, one could come out with the "absurd result that people with disabilities are protected if they shop in-store at Whole Foods, but not if they shop online at Whole Foods." *Id.* at *18. Rejecting the Eastern District's reasoning, the court in *88 Acres* then determined that the constructions *noscitur a sociis* and *ejusdem generis*, should be read in the context of this catch-all clause regarding service and other retail establishments as encompassing non-brick-and-mortar sales establishments. *Id.* at *18.

Furthermore, Judge Wood analyzed the legislative history of the ADA, noting that Congress intended that the "types of accommodation and services provided to individuals with disabilities . . .should keep pace with the rapidly changing technology of the times." *Id.* at *19. This applies to the large volume of interstate commerce transacted through websites. *Id.* Given the prominence of online retail establishments in providing goods and services directly to customers, Congress' intent in passing the ADA would be stymied were public accommodations limited to physical spaces. Defendant's memo does not distinguish or cite to this important decision.

Judge Wood's ruling is the culmination of a long series of rulings by Southern District Judges. Following the seminal holding by the Second Circuit in *Pallozzi*, 198 F.3d at 32 that "the

[ADA] was meant to guarantee . . .more than mere physical access," Judge Engelmayer held in *Del-Orden*, 2017 U.S. Dist. LEXIS 209251, at *24:

> A commercial website itself qualifies as a place of public accommodation to which Title III of the ADA affords a right of equal access." To hold otherwise, "Congress's purposes in adopting the ADA would be frustrated were the term public accommodation given a narrow application under which access to the vast world of Internet Commerce would fall outside the statute's protection.

From *Del-Orden* to *Arby's Franchisor,* through *88 Acres*, other courts of the Southern District have continuously held that arbitrarily excluding entities that sell and distribute goods and services digitally as opposed to physical locations is both unworkable and not in keeping with the text and history of the statute.  These include:

- Judge Woods, *Dominguez v. Banana Republic, LLC*, 1:19-cv-10171-GHW, 2020 U.S. Dist. LEXIS 72193, at *22-*23 (S.D.N.Y. April 23, 2020)  ("[Requiring] some nexus between the website and the physical place of public accommodation is both unworkable and would produce absurd results.");

- Then-District Judge Nathan, *Winegard v. Crain Comms., Inc*., 20-cv-01509 (AJN), 2021 U.S. Dist. LEXIS 60964, at *6 (S.D.N.Y. Mar. 30, 2021) ("Defendant's website is a place of public accommodation.");

- Judge Oetken, *Jaquez*, 2021 U.S. Dist. LEXIS 96067, at *7-*8 ("multiple district courts in this circuit-including this one-have held that websites qualify as places of public accommodation, even when they are not attached to a traditional brick-and-mortar store."); and

- Judge Failla, *Paguada*, Ex. C to the Kroub Decl.

There is no ambiguity – in this District, commercial websites are places of public accommodation under the ADA.

Defendant's focus on foreign jurisdictions suggests that the Southern District's rulings are anomalies.  This is false.  For example, the Seventh Circuit also refused to limit its interpretation of places of public accommodation to physical locations, and when the seminal case in that Circuit came to pass, the Supreme Court of the United States denied certiorari. *See Doe v. Mutual of Omaha Ins. Co*., 528 U.S. 1106 (2000) (cert. denied); *see also Morgan v. Joint Admin Bd*., 268 F.3 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation").[7]

Thus, whether Defendant's Website is connected to a physical place of business is immaterial for the purposes of the ADA.  Defendant's implied attempts to impugn the decisions of the judges of the Southern District as aberrant is unavailing.

### D.  THE FACAC'S NYCHRL CLAIM SURVIVES AS WELL

For the reasons discussed above, Defendant's attacks on Plaintiff's New York City claims should also fail.  Defendant asserts that the Court must likewise dismiss the New York City claims because Plaintiff lacks standing or a valid federal claim.  Def. Mem. at 21.  However, as demonstrated *supra*, Defendant has not demonstrated sufficient grounds upon which to obtain dismissal of the ADA claim at issue in this action under either 12(b)(1) or 12(b)(6).  *See Bullard*

---

[7]      Similar decisions have been issued by various federal district courts in several circuits.  *See, e.g.*, *Mejico v. Alba Web Designs, LLC*, Civil Action No 7:20CV00039, 2021 U.S. Dist. LEXIS 13354, at *16 (W.D. Va. Jan. 25, 2021) ("[P]laces of public accommodation are not limited to physical, brick-and-mortar establishments and instead include commercial websites that offer good [sic] and services. The fact that [defendant] has no physical location open to the public is not dispositive"); *see also Access Living of Metro Chi. v. Uber Techs., Inc*., 351 F. Supp 3d 1141, 1156 (N.D. Ill. 2018) (finding "[a] place of public accommodation does not have to be a physical space and plaintiffs have plausibly alleged that Uber [a digital phone app] operates a place of public accommodation"); *Access Now, Inc., v. Blue Apron, LLC*, Civil No 17-cv-116-JL, 2017 U.S. Dist. LEXIS 185112, at *13 (D.N.H. Nov. 8, 2017) ("Recognizing that structural barriers may prevent individuals with disabilities from accessing and fully engaging with websites, the DOJ has construed websites as 'places of public accommodation' under Title III of the ADA for over 20 years"); *Nat'l Ass'n of the Deaf v. Netflix, Inc*., 869 F. Supp. 2d 196, 200-01 (D. Mass. 2012).

*v. Drug Policy All.*, 18 Civ. 8081 (KPF), 2019 U.S. Dist. LEXIS 222854, at \*23-\*24 (S.D.N.Y. Dec. 30, 2019) ("[a] court shall exercise supplemental jurisdiction if a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy." (citing 28 U.S.C. §1367(a)).  Accordingly, Defendant's request to obtain dismissal of the New York City claim should likewise be denied.

## V.    CONCLUSION

For the reasons set forth above, the Court should respectfully deny the Motion to Dismiss in its entirety.[8]

DATED:  New York, New York          **MIZRAHI KROUB LLP**
       April 13, 2022

                           /s/ Edward Y. Kroub
                           EDWARD Y. KROUB

         EDWARD Y. KROUB
         JARRETT S. CHARO
         WILLIAM J. DOWNES
         200 Vesey Street, 24th Floor
         New York, NY  10281
         Telephone:  212/595-6200
         212/595-9700 (fax)
         ekroub@mizrahikroub.com
         jcharo@mizrahikroub.com
         wdownes@mizrahikroub.com

         *Attorneys for Plaintiff*

---

[8]    In the alternative, should the motion be granted, Plaintiff respectfully requests leave to replead.  *See Cortec Industries, Inc., v. Sum Holding L.P.*, 949 F.2d 42 (2d. Cir. 1991); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also Wilson v. Jord Inc.*, No. 20-CV-1899-LJV-JJM, 2022 U.S. Dist. LEXIS 58849 (W.D.N.Y. Mar. 30, 2022) (a recent website accessibility ruling on a motion to dismiss granting plaintiff leave to amend).