UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
YENSY CONTRERAS, Individually, and On
Behalf of All Others Similarly Situated,

                               Plaintiff,

   -against-

SCRUB DADDY, INC.,

                              Defendant.
------------------------------------------------------------------------X

Case No.: 1:21-cv-09434

**REPLY IN SUPPORT OF
DEFENDANT'S MOTION
TO DISMISS
THE COMPLAINT**

## INTRODUCTION

Defendant Scrub Daddy, Inc. ("Scrub Daddy") filed a motion to dismiss (Motion) the Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. ECF. No. 20-22. In response, Plaintiff filed a First Amended Complaint (ECF. No. 26), followed by an opposition to this motion (Opp.). ECF. No. 30. Scrub Daddy submits this reply in response. The arguments set forth herein are in addition to and furtherance of the arguments set forth in Scrub Daddy's underlying Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint.

## THOSE WHO LIVE IN GLASS HOUSES

As a preliminary matter, given the breadth of Plaintiff's arguments in opposition to Scrub Daddy's motion, it is necessary to point out that Plaintiff counsel's own website, MizrahiKroub.com, currently contains at least 8 errors or potential access barriers on it. Attached hereto as **Exhibit "A"** is a report from a free web accessibility evaluation tool, WAVE (wave.webaim.org), indicating same. The sheer irony of this notwithstanding, it highlights the fact that this matter has little to do with the intended purposes of the ADA. Rather, Plaintiff and his counsel have clearly set out to make a tidy profit filing cookie-cutter lawsuits against

1

companies that sell goods online. Given the number of cases Plaintiff and his counsel have filed in the Southern District of New York alone (approximately 136 as noted in Scrub Daddy's underlying motion), business appears to be very good.

More importantly, the errors on Plaintiff counsel's **own** website incontrovertibly demonstrate that such potential access barriers, without more, do not automatically prevent a visually impaired person from equal access to the underlying company's goods or services. If this were the case, Plaintiff would have different counsel right now. But instead, Plaintiff's relationship with his own counsel (in spite of the overt access barriers on their website), reminds us that **the internet is not our sole means off communication**.

Indeed, as antiquated as such modes of communication may seem in a post-Covid world, the telephone, invented *circa* 1876, and more recently the cellular telephone, invented *circa* 1973, remain steadfast instruments of modern communication. As argued in its underlying initial motion (Motion p. 9), Scrub Daddy itself has a toll-free phone number, 844-35-SCRUB (72782). This number can be found on any internet search engine and reached any time of day from anywhere in the world. Once called, service representatives are available to help potential customers both find the products they need and place orders, all without ever having to touch a computer.

Based on this, if the use of an analogy might be permitted, the sum of Plaintiff's position is that even where both stairs and a ramp are available, a person who cannot use the stairs always has a claim under the ADA. This not only defies logic, but it could not be further from the intended purpose of the statute. Quite the opposite, it does little more than unnecessarily tax the resources of the Court system. Even worse, those who truly require the protections of the ADA

are left drinking from the same polluted trough as serial litigants and settlement-mill law firms who flagrantly abuse the ADA as a cottage industry.

## LACK OF SUBJECT MATTER JURISDICTION

Precisely in line with the above, in response to Scrub Daddy's motion Plaintiff has taken the time to amend his initial Complaint and goes on at length in his opposition about how the few, bare-minimum facts he added somehow cure all deficiencies of his pleading. But this misses the point entirely. Plaintiff does not allege that he ever picked up the phone and attempted to call Scrub Daddy's customer service line. Had he done so, he would currently be the proud owner of, as he alleges, a "Style Collection Scrub Daddy cleaning brush," and we could all be dedicating our current time and attention to other endeavors.

Plaintiff's failure to avail himself of Scrub Daddy's customer service phone line also makes it clear that he has suffered absolutely **no injury in fact**. Plaintiff was never denied equal access to Scrub Daddy's products at any time. An equivalent means of access to Scrub Daddy's goods was always available to him. Despite this, he irrationally demands that the Court focus solely on the alleged deficiencies of Scrub Daddy's website (which, per the attached WAVE report for Scrub Daddy, **Exhibit "B,"** are nonexistent). This mode of thinking is entirely misplaced and devoid of even the most basic logic.

To go a step further, it can be argued that even without any errors on the website, Scrub Daddy's customer service phone line still provides Plaintiff with **better** access to Scrub Daddy's products than the website ever could. At its best, the most Plaintiff could have obtained on his computer were limited, pre-written descriptions of Scrub Daddy's products. But via phone, he would have had the opportunity to get custom-tailored descriptions of Scrub Daddy's products and specific answers to any questions he might have had about them. He also would have been

3

able to receive personal opinions about each product and recommendations for alternative products that might have better suited his needs. Plaintiff disregard this entirely. Instead, his apparent position is that the availability of personal, one-on-one customer service somehow provided him less access to Scrub Daddy's goods than listening to pre-recorded descriptions read to him by a robot.

Plaintiff even goes so far as to argue that dismissal of his complaint would lead to an "absurd result," citing the recent decision in *Romero v. 88 Acres Foods, Inc.*, 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022). But Romero is highly distinguishable from the current matter. It stands to reason that where a company's website is generally the **only** means of access to a company's goods, such as in *Romero*, dismissing a claim while potential access barriers on that website persist would seem to contravene the purposes of the ADA. **But that is not the case here.**

At all times, Scrub Daddy has a readily available customer service phone number, through which products can be reviewed and orders can be placed, and the purposes of the ADA are readily achieved. To recall the analogy offered above, true absurdity is refusing to use a perfectly good ramp in the hopes of filing a lawsuit about the stairs. This is exactly what Plaintiff has done.

## IMPROPER INTERPRETATION OF "PRECEDENT"

Plaintiff argues that because several judges in this district have ruled in his favor against other defendants, this Court is obligated to do the same. This argument not only ignores the numerous contrary rulings in this district (and elsewhere) cited in the Motion, but it is also improper as a matter of law. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a

different case." *Camerta v. Greene*, 563 U.S. 692, 709 (2011) (quotation omitted). "District court decisions ... create no rule of law binding on other courts." *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 (2d Cir. 2008) (cleaned up). This Court instead will determine which cases in this district and elsewhere it finds most persuasive to the matter at hand.

## NO PERSONAL JURISDICTION

Scrub Daddy also seeks to dismiss this case for lack of personal jurisdiction. Plaintiff does not—and cannot—dispute any of the jurisdictional facts asserted by Scrub Daddy, including the fact that Scrub Daddy does not target its website to New York. Plaintiff's argument is that because the website is visible in New York, and because Scrub Daddy sells products to New York residents, this Court has jurisdiction over a claim that the website is inaccessible. *See*, *Paguada v. Work Warm*, LLC, No. 1:22-cv-01289-VSB, ECF No. 1, ¶¶ 11–12 (S.D.N.Y. Feb. 15, 2022) (venue proper, in part, because the Plaintiff, a resident of Queens, "attempted to utilize the website in this District") (same Plaintiff's counsel). Plaintiff's limitless view of personal jurisdiction for websites cannot be reconciled with controlling precedent.

Plaintiff's own authority, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) (Opp. 19), instead supports Scrub Daddy's motion. As that case makes plain, "New York courts define transacting business as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 490 F.3d at 246 (citations omitted). Because Plaintiff does not dispute that Scrub Daddy does not aim its website at New York, it has not engaged in the "purposeful activity" necessary to subject it to suit concerning its website under New York's long arm statute.

The suggestion that selling products through its website to New York residents opens Scrub Daddy up to claims not only about the products it sells, but also to the operation of the website itself, runs into the brick wall of Supreme Court jurisprudence. To repeat, "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). "[F]or a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy.... When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* (ellipsis and emphasis added by court).

For a claim about its website, it does not matter that Scrub Daddy sells products to New York residents. Furthermore, as explained in the Motion, and not addressed at all by Plaintiff, the notion that a company could be sued anywhere its website is visible would gut the distinction between general and specific jurisdiction, and thus would violate due process. *See* Motion 15. This Court lacks personal jurisdiction over Scrub Daddy.

## NO PLACE OF PUBLIC ACCOMMODATION

Scrub Daddy seeks to dismiss this case for failure to state a claim because a website is not a place of public accommodation. We again direct the Court's attention to the thoughtful and comprehensive decision in *Winegard v. Newsday*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021), which analyzes the statutory language and legislative history to conclude that a website is not a place of public accommodation.

The gamut of Plaintiff's suggested authorities support the counter-intuitive conclusion that a website is either a "place" or a "public accommodation." Most of them trace that conclusion back to *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), which the

Newsday court explains is misplaced. On their own terms, Plaintiff's authorities cannot support the weight placed upon them:

- *Lopez v. Arby's Franchisor*, LLC, 2021 WL 878735 (S.D.N.Y. Mar. 8, 2021) (Opp. 21). Although Plaintiff claims that this was this Court's "holding," this is *dicta* in a case in which this Court ruled that gift cards were not places of public accommodation.

- *Dominguez v. Banana Republic LLC*, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020) (Opp. 23). This is dicta in a case in which the court ruled that gift cards were not places of public accommodation.

- *Winegard v. Crain Comms., Inc*., 2021 WL 1198960 (S.D.N.Y. Mar. 30, 2021) (Opp. 23). This was a single line in a default judgment in which the defendant did not contest this (or any other) issue.

- Doe v. Mutual of Omaha Ins. Co., 528 U.S. 1106 (2000) (Opp. 24). This was only a denial of a *writ of certiorari*. *See Foster v. Florida*, 537 U.S. 990 (2002) (Stevens, J.) ("I think it appropriate once again to emphasize that the denial of a petition for a *writ of certiorari* does not constitute a ruling on the merits.") (citations omitted).

- *Del-Orden v. Bonobos, Inc*., 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017) (Opp. 23), did not have the benefit of the more recent, carefully reasoned, contrary decisions cited in the Motion, and thus relies heavily on *Pallozzi*, and the court's view of the statute's purpose, legislative history, and context instead of its express language. *Compare id.* at *5, 7–9 with Motion 18–20.

Beyond the cases noted above, Plaintiff hangs his hat upon *Romero v. 88 Acres Foods, Inc.*, 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022) (same Plaintiff's counsel). Although the court did not find persuasive the court's reasoning in *Winegard v. Newsday*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021), or any of the contrary decisions in this district or a majority of the Circuits, *see 88 Acres Foods*, 2022 WL 158686, at *5–6, this Court obviously will make its own assessment. The court acknowledged that the statute "is silent as to websites." *Id.* at *6. Rather than confine itself to the language of the statute, the court instead substituted its view of the statute's purpose, legislative history, and context. *Id.*

In looking at the statutory list of "public accommodations," the court focused first on "travel services," *Id.*, but the Newsday court explained that the other 49 examples are all physical locations, and the context indicates that would be true for travel services as well. *See Newsday*, 2021 WL 3617522, at *3. The court further looked to "bakeries, grocery stores, clothing stores ... or other sales or rental establishments," which "could be interpreted to be limited to brick- and-mortar locations," but that "would lead to an absurd result." *88 Acres Foods*, 2022 WL 158686, at *7 (citation omitted).

As the *Newsday* court explained, this is scarcely absurd because "there were countless other types of businesses operating outside of brick-and-mortar premises in 1990, including some that had been in operation for decades," and Congress **did not** amend the statute in 2008 to include non-physical locations long after online shopping became a multibillion-dollar enterprise. *Newsday*, 2021 WL 3617522, at *4.

In the end, the dispute is over the language of the statute that Congress actually did write versus the language some courts think Congress should have written. Unless and until Congress changes the law, a website is not a place of public accommodation.

## **CONCLUSION**

For the reasons herein, and the reasons set forth in the underlying Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, Defendant respectfully requests that the Court dismiss the Complaint with prejudice for lack of subject matter jurisdiction, lack of personal jurisdiction, and/or for Plaintiff's failure to state a claim upon which relief can be granted.

Dated: Woodbury, New York
       April 27, 2022

                                    MILBER MAKRIS PLOUSADIS
                                     & SEIDEN, LLP

                                    *John J. Byrnes*
                                    John J. Byrnes, Esq.
                                    Attorneys for Defendant
                                    1000 Woodbury Road, Suite 402
                                    Woodbury, New York 11797
                                    (516) 712-4000
                                    Our File No.: 420-21465